[No. 19535. Department Two.—March 15, 1895.]

## DAVID HEWES, Respondent *v*. GERMAIN FRUIT COMPANY, Appellant.

Contract for Sale of Raisins—Curing—Delivery.—An agreement for the sale of a crop of raisins, which provides that "raisins now uncured to be cured and delivered at packing-house in good order," does not require that the raisins should be cured when brought to the packing-house. Such provision is complied with if the raisins are properly cured after being brought to the packing-house, and in such condition are delivered to the purchaser.

Id.—Executory Contract—Title.—Such contract, as to the uncured raisins, was executory, and the title thereto did not pass to the purchaser in the absence of a delivery and payment of the purchase price, in accordance with the terms of the contract.

Id.—Measure of Damages—Breach by Buyer—Value.—Upon the refusal of the purchaser to accept and pay for such raisins when delivery was tendered him by the seller the latter is not required, in order to recover of the purchaser the difference between the contract price and the value of them to him, to sell them in the manner prescribed by the code for the sale of pledged property; if he does so sell them such sale is conclusive as to their value, while, if not so sold, he must prove their value to him in the action against the purchaser.

Id.—Interest.—Under section 3311 of the Civil Code, in an action by the seller against the buyer to recover damages for the breach of a contract for the sale of personal property which had no established or reasonably well-known market value, interest on the excess of the contract price over the value of the property to the seller is not recoverable.

Id.—Evidence.—In such action a contract between other parties, which was referred to in the contract on which the action was based, for the purpose of fixing certain of its conditions, is admissible in evidence.

Id.—Evidence of Expert.—A witness for the plaintiff in such action, after testifying that he had examined the raisins and found them in good merchantable condition, and on cross-examination stating that he could not tell the number of boxes he examined, may be allowed to testify on redirect examination that his examination was made in the method usual with experts.

Id.—Harmless Error.—Error in admitting evidence on behalf of the plaintiff, the only effect of which was to support an allegation of the answer, is not ground for reversal at the instance of the defendant.

Appeal from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial.

The facts are stated in the opinion.

*Chapman & Hendrick*, for Appellant.

*Allen & Flint*, for Respondent.

Haynes, C.—This action was brought to recover damages, laid at $1,200, for an alleged breach by the defendant, a corporation, of the following contract:

"Tustin, Oct. 29, '86.

"Agreement between David Hewes and Germain Fruit Co., whereby said David Hewes sells and Germain Fruit Co. buys the crop of raisins owned by said D. Hewes (eight to ten thousand boxes, more or less, said raisins being his entire crop of this season, say 5,000 boxes in warehouse, balance on ground being cured), at one and $\frac{40}{100}$ dollars per box, packed and delivered—raisins now uncured to be cured and delivered at packing-house in good order—raisins to be packed under existing contract with S. Ana Fruit Packing Co., subject to any mutual agreement made with Germain Fruit Co., as to any alteration thereof. D. Hewes reserves the right to put his stencil upon raisins when packed. Payments to be made as follows: Twenty-nine cents per box to be paid to S. Ana Pkg. Co. upon delivery of each carload, balance of one and $\frac{11}{100}$ dollars per box to be paid to D. Hewes upon like delivery."

The second amended complaint set out this agreement, and proceeded to allege as follows: "The plaintiff duly performed all the conditions of the said contract on his part, and delivered to the defendant and the defendant received all the said crop of raisins, excepting 2,905 boxes of the same; which said 2,905 boxes were in due time cured and delivered in good order at the packing-house referred to in said contract, and there properly packed and left in good order and condition, subject to order of defendant, prior to the 3d day of January, 1887, and the defendant duly notified thereof; but the said defendant refused to accept the said goods or to pay for them pursuant to said agreement, to the plaintiff's damage in the sum of $1,200."

A general demurrer was filed to this second amended complaint, but no ruling thereon appears of record. The complaint is not a model of perspicuity, and pos-

sibly a demurrer for uncertainty might have been sustained, but we think a general demurrer could not.

The answer denied the performance of the contract, and alleged, for a separate defense, that the 2,905 boxes here in question "were not delivered at the packing-house in good order, cured," but that they were so poorly cured as to be unfit for the market, and that defendant refused to accept or pay for the same; that plaintiff afterward removed them, and, after further treatment in curing and packing, again tendered them to defendant, but, on account of the delay caused by the failure of the plaintiff to perform his contract, the market had depreciated; that they were not delivered at the packing-house in good order within a reasonable time, and defendant refused to accept them.

The cause was tried by the court, and findings and judgment were for the plaintiff in $1,095.15, with interest thereon from March 6, 1887; and this appeal is from said judgment and an order denying defendant's motion for a new trial.

The specifications of error are to rulings upon evidence, and that certain findings are not justified by the evidence.

The exceptions to the third and fourth findings cover the same point, and may be considered together. The third is a general finding that plaintiff performed all the conditions of the contract on his part, and the fourth specifically finds that on and prior to the 15th of December, 1885, the plaintiff caused all the raisins to be cured and packed at the packing-house mentioned, in good order and in strict accordance with the terms of the contract.

The contention of appellant is, briefly stated, that when plaintiff brought the raisins here in question to the packing-house they were not sufficiently cured; that they were afterward removed and subjected to further treatment, after which they were packed.

The evidence upon this point is to the effect that the raisins were taken from the trays in the vineyard and

put in "sweat-boxes," and brought to the packing-house in the usual manner. It was then found that some of them were not sufficiently cured, and these were selected out, put upon trays, and taken outside of the packing-house and exposed to the sun, and, when sufficiently cured, and when all had gone through the sweating process, were assorted and packed.

Appellant's contention that they were not delivered at the packing-house cured and in good order means, as is clearly disclosed by the special defense in the answer, that at the time they were *brought to the packing-house* they were not properly cured and in good order. The language of the contract—"raisins now uncured to be cured and delivered at packing-house in good order"— was not intended to refer to their condition when *brought* to the packing-house, but the "delivery" there mentioned refers to the delivery to the *defendant*, which was to be at the packing-house after they were properly packed. It could make no possible difference to the defendant whether they were cured where they were grown or at the packing-house, if they were in fact properly cured, packed, and afterward delivered to it in good order.

That this is the true construction of the contract is further apparent from the fact that the raisins, even if properly cured upon the ground, are not ready for packing when brought to the packing-house, but are first put through the sweating process, which occupies from one week to three weeks. The answer of defendant clearly shows that it was the bad condition of the raisins at the time they were brought to the packing-house that was relied upon, as the answer proceeds to allege that they were afterward removed and subjected to further treatment and packed, and that it then refused to accept them because not delivered within a reasonable time, and "the market price of raisins had greatly depreciated." The evidence is quite sufficient to sustain the third and fourth findings.

It is contended that the sixth finding, so far as it finds that said 2,905 boxes of raisins were packed in good

order, "within a reasonable time after the date of said contract," is not supported by the evidence. The contract fixed no time for the delivery of the raisins then uncured. The time required for curing depended upon the state of the weather, which is not always accurately predicted, even by the weather bureau. Nor does it appear that a longer time was required to cure the selected portion at the packing-house than would have been required in the field, and hence it does not appear that the packing was, or could have been, thereby delayed. The court found not only that they were cured and packed within a reasonable time, but that they were packed in good order, and this finding is sustained by sufficient evidence. Whether the answer raised an issue as to their condition when packed, and tendered to the defendant, need not be considered. These remarks also include the exceptions to the ninth, tenth, and eleventh findings.

The exceptions to findings 13, 15, 16, and 17 may be considered together, and a general statement made, instead of reciting the findings.

On the 6th of March, 1887, the plaintiff sold the 2,905 boxes in question for $2,971.85 at a private sale, and the court found that that was the full value of them, and the best price at which they could have been sold between the 2d of December, 1886, and the day they were sold, and that the amount due to the plaintiff from the defendant under the contract over the value of the same to the plaintiff, at all times between said dates, was $1,095.15.

There was no evidence contradicting the testimony of the plaintiff that he obtained the highest price for the raisins in question for which they could have been sold; but it is contended that they should have been sold in the manner prescribed by the code for the sale of pledged property, and cite Civil Code, section 3049. This contention is based upon the supposition that the title or property in the raisins has passed to the defendant, and that, therefore, he could not dispose of them at

private sale, or keep them and recover of the defendant the difference between the contract price and the value of them to him under subdivision 2 of section 3311 of the Civil Code.

But the property in the raisins which were uncured did not at any time pass to the defendant. As to this part of the crop, the contract was executory, and "title is transferred by an executory agreement for the sale or exchange of personal property only when the buyer has accepted the thing, or when the seller had completed it, prepared it for delivery, and offered it to the buyer, with intent to transfer the title thereto in the manner prescribed in the chapter on offer of performance." (Civ. Code, sec. 1114.) By section 1502 of the Civil Code, "the title to a thing offered in performance of an obligation passes to the creditor, if the debtor at the time signifies his intention to that effect."

I find nothing in the evidence which signified plaintiff's intention, in tendering the raisins in fulfillment of his contract, to pass the title to the defendant. On the 2d of December the defendant, finding the raisins not perfectly cured, notified the plaintiff that it would not accept them. At that time all had not been done by the plaintiff which the contract required him to do, and they were not ready for delivery, and hence the tender after they were packed and ready for delivery. The contract, however, made payment by the defendant upon delivery a concurrent condition, and that condition was not waived.

The sale of such property in the manner in which pledged property is required to be sold is not confined, however, to property the title to which has passed to the buyer; but, if the property is sold in that manner where the title has not passed, such sale is conclusive as to the value of the property, while, if it is not so sold, the plaintiff must prove the value of the property to him; and this value was found by the court upon sufficient evidence.

Section 3353 of the Civil Code provides: "In esti-

mating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

The seventeenth finding is to the effect that, by the refusal of the defendant to take and pay for 2,905 boxes of raisins, it became indebted to the plaintiff in the sum of $1,095.15; and appellant contends that there was no evidence or allegation proving, or tending to prove, that defendant was "indebted" to the plaintiff in any sum whatever on account of such refusal, and that the evidence is insufficient to justify any finding of fact or conclusion of law that the plaintiff was entitled to recover interest upon any amount or for any time whatever.

Section 3287 of the Civil Code is as follows: "Every person who is entitled to recover damages, certain or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled to recover interest thereon from that day, except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

It is quite clear that payment by defendant to plaintiff at the date of the trial, or even upon the day the action was commenced, of the sum of $1,095.15, would not have been just and full compensation to the plaintiff for the detriment caused by defendant's failure to accept and pay for the raisins on December 20, 1886; but, unless this case can be held to be within the provisions of the section last above cited, interest, *eo nomine* at least, cannot be allowed, for by section 3311 of the Civil Code, which declares the excess of the contract price over the value of the property to the seller, including the extra expense of taking it to market, to be the measure of damages, does not mention "interest," while section 3357 of the Civil Code, provides as follows: "The dam-

ages prescribed by this chapter are exclusive of exemplary damages and interest, except where those are expressly mentioned."

In some jurisdictions it is held, in cases of unliquidated damages, that though the jury may, according to their discretion, take into account interest as part of the damages, yet they cannot give it as interest *eo nomine;* but our code limits the discretion of the jury in this regard. Section 3288 of the Civil Code is as follows: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given in the discretion of the jury."

Considering these several code provisions together we conclude that where interest can be given it may be given as such; but as section 3311 of the Civil Code does not, in fixing the measure of damages in cases of this character, include interest, it cannot be given, unless it can be held that the damages in this case were "capable of being made certain by calculation," and this we think could not be done. There are cases which hold that when the measure of damages is the difference between the contract and market prices at the date of the breach, interest is to be added as a necessary item in the estimate. (See *Van Rensselaer* v. *Jewett*, 2 N. Y. 136; 51 Am. Dec. 275; *Dana* v. *Fiedler*, 12 N. Y. 40; 62 Am. Dec. 130; note to *Selleck* v. *French*, 1 Am. Lead. Cas. 511; 1 Sutherland on Damages, 1st ed., 610: 2d ed., secs. 347, 348; and *Cox* v. *McLaughlin*, 76 Cal. 60, 67, where some of these authorities are cited.)

Whether interest could have been allowed if the complaint had alleged the market price at the date of the breach, and demanded judgment for a specific sum being the difference between the contract and market prices, it is not necessary to consider; but it does not appear from the complaint or finding, unless inferentially, that there was any established or reasonably well-known market price upon which a "calculation" could be based with sufficient certainty to charge the defendant with

a knowledge of it, so that it is not clear, even if we were at liberty to follow the New York authorities, that interest could be allowed. The fact that in the findings the damages are called an "indebtedness" does not affect the character of the action.

It was not error to receive in evidence the contract between the plaintiff and the Santa Ana Valley Fruit Company. It is referred to in the contract between plaintiff and defendant, and specified the weight of the boxes and the grades to be made in packing, neither of which were stated in the contract between them, and thus became part of the contract.

Upon redirect examination the plaintiff was asked if he had a conversation with Mr. Simpson, the agent of the defendant, in the fore part of January, 1887, in relation to the reason for its refusal to receive the raisins, counsel stating that they expected to show that he said the fact that the market had gone down was probably the reason. The court admitted the evidence over defendant's objection. If this evidence could have any significance it could only be as an admission made by the defendant, and it was not shown that Simpson had authority to make any admissions as to a past transaction affecting the defendant's liability. But conceding the error, the judgment should not be reversed for that reason. The fact proposed to be shown by the witness, and to which he testified, is no broader than the admission in the last clause of defendant's answer, to the effect that when the raisins were packed and tendered to defendant, on account of the delay occasioned by plaintiff's failure to perform his contract within a reasonable time, the market price of raisins had greatly depreciated, and defendant refused to accept them or pay for them. As the court found upon sufficient evidence that the raisins were cured and packed in good order within a reasonable time, the reason for the defendant's notice, given on the 2d of December, before the raisins were packed or ready for delivery, became wholly unimportant; and if the conversation referred to the tender of the raisins

CVI. CAL.—29

after they were packed, and the second refusal, it was, in substance, a reiteration of the answer, and harmless.

W. G. McPherson, called by the plaintiff, testified that he examined the raisins in question at the request of the plaintiff, and found them in good merchantable condition. Upon cross-examination he said he could not tell the number of boxes he examined, but thought as many as half a dozen, taking them from different parts of the pile. Upon a redirect examination he was asked: "How did this examination compare with the usual and ordinary examination by experts to ascertain the value or quality of the raisins?" Defendant objected that it was irrelevant and immaterial. The witness answered that it was the usual method. We do not perceive any error in overruling the objection. Such examination, whatever its character, as is usually made by experts to determine the quality, and upon which they act in matters affecting their own interest, must be held admissible. The weight to be given it is a question apart from its admissibility.

The answer of the witness E. Germain, which was stricken out on motion of plaintiff, may have tended in some slight degree to show the length of time required to cure raisins, though it could scarcely be said to be responsive to the question. But in any event the defendant was not prejudiced, as he was further interrogated, and in reply said he thought it took about two weeks from the time they were spread out. This answer would not have been strengthened by that which was stricken out.

No other specifications are discussed by appellant.

The judgment should be modified by striking out the words "sixteen hundred and ten and $\frac{61}{100}$," and inserting "one thousand and ninety-five and $\frac{15}{100}$," the modified judgment to bear interest from the date of the original judgment; and as so modified the judgment and order appealed from should be affirmed without costs upon appeal to either party.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion it is ordered that the judgment appealed from be modified by striking out the words "sixteen hundred and ten and $\frac{61}{100}$," and inserting the words "one thousand and ninety-five and $\frac{15}{100}$," the modified judgment to bear interest from the date of the original judgment; and, as so modified, the judgment and order appealed from are affirmed, without costs, upon appeal, to either party.

McFARLAND, J., TEMPLE, J., HENSHAW, J.

Hearing in Bank denied.