[Civ. No. 720.   First Appellate District.—April 26, 1910.]

## J. B. MORRELL, Respondent, v. SAN TOMAS DRYING AND PACKING COMPANY, and BALFOUR, GUTHRIE & CO., Appellants.

SALE OF PRUNE CROP—DELIVERY—EXTENDED TIME—TENDER AND RESALE OF REJECTED PART DURING EXTENSION—GENERAL DEMURRER TO COMPLAINT.—A complaint setting forth a written contract for the sale of the whole of a prune crop, to be delivered at an agreed price before a specified date, and an extension of time for performance, and the acceptance of the larger part, and the rejection of a specified number of pounds tendered during such extension, is not subject to a general demurrer on the ground that such rejected portion of the crop was sold upon notice before the expiration of such extended time.

ID.—RIGHTS UNDER EXTENDED TIME.—The extension of time pleaded was to give plaintiff further time to perform; and when plaintiff, within that time, offered to perform, the defendants were bound to accept, if in other respects the offer was in accordance with the contract. Upon defendants' refusal to accept the tendered fruit, the plaintiff was justified in reselling the same.

ID.—SPECIAL DEMURRER TO COMPLAINT—PRICE OR VALUE OF REJECTED PRUNES NOT SHOWN—UNCERTAIN ASCERTAINMENT OF DEFICIENCY.—The court erred in overruling a special demurrer to the complaint for ambiguity and uncertainty, in that it does not show the price or value of the rejected prunes, and that it cannot be ascertained with certainty how the alleged deficiency on resale was determined.

ID.—STATEMENT OF DAMAGES FOR BREACH NOT SHOWN.—The complaint is further uncertain in that it does not contain or show any damages arising to the plaintiff from defendant's breach of the contract, in rejecting the last tender of the residue of the prunes contracted for.

ID.—VARIATION FROM BASIS PRICE ACCORDING TO SIZE—UNCERTAINTY AS TO SIZE.—Where it appears that a basis price per pound was agreed, with an agreed variation therefrom by increase or diminution according to size, the complaint was also uncertain in not showing the size of the rejected prunes, as bearing upon the agreed price or value thereof.

ID.—MEASURE OF DAMAGES FOR BREACH OF BUYER'S AGREEMENT IN CASE OF RESALE—UNCERTAINTY AS TO DIFFERENCE.—Under section 3311 of the Civil Code, the detriment caused by the breach of a buyer's agreement to accept and pay for personal property, if it has been resold under section 3049, is "the excess, if any,

13 Cal. App.—20

of the amount due from the buyer over the net proceeds of resale." Though plaintiff probably intended to bring the complaint within this section, yet he has failed to show with certainty, or at all, that the "deficiency" referred to is the difference between the contract price of the rejected prunes and the amount for which they were resold, or to give any data from which such difference can be determined.

Id.—Insufficiency of Evidence to Sustain Verdict for Loss on Resale.—Where the same uncertainty and insufficiency which appears in the complaint, as to the price or value or size of the rejected prunes, or as to the difference on resale, appears in the evidence, a verdict for the amount of the alleged deficiency on resale of the rejected prunes is unsupported by the evidence.

Id.—Variance Between Averment and Proof.—Where the complaint alleges that the price of the entire prune crop was $6,004.37, and the evidence shows without conflict that defendant paid plaintiff $6,455.71 for the accepted prunes, it appears that plaintiff has been paid more than was due him for the entire crop. If the allegation of the complaint was a mistake, as suggested by plaintiff, as a witness, he made no effort to correct it.

Id.—Evidence—Meaning of Contract—"Morrell Ranch"—Leases by Plaintiff—Quantity of Prunes.—Where the contract called for the entire crop of prunes estimated at 100 tons grown and dried on the orchard known as the "Morrell ranch," evidence was admissible to show that the plaintiff "Morrell" was in fact working under leases three ranches, and that the contract contemplated the whole prune crop grown by "Morrell" under his three leases, which was in fact less than the estimated quantity.

Id.—Ambiguity in Contract—Oral Evidence to Identify Subject.—There was such an ambiguity in the contract as to authorize oral evidence to identify the subject of the contract.

Id.—Conflicting Evidence—Sufficiency of Quality of Rejected Prunes.—Where the evidence is conflicting as to whether the rejected prunes met the requirements of the contract as to quality, the verdict cannot be interfered with for that reason, notwithstanding the evidence seems to preponderate upon that point against the plaintiff.

Id.—Testimony of Plaintiff—Resale of Prunes—Acceptance by Purchaser After Examination—Restriction of Cross-examination—Error.—After permitting plaintiff to testify that the rejected prunes were bought on resale for the Presto Fruit Company, after examination and acceptance by them, it was error for the court to restrict the right of cross-examination, by disallowing questions as to what was done with the prunes, and whether or not prunes could be used in the process employed by that company that would not be suitable for shipping in boxes.

Id.—Object of Plaintiff's Evidence—Lessening of Weight.—It
being the clear object of plaintiff's testimony to show that the
rejected prunes were merchantable, and complied with the con-
tract, the weight of his evidence might have been materially
affected, if on cross-examination it were shown that the prunes
in question were used in a process not requiring choice fruit.

Id.—Erroneous Instruction as to Interest—Construction of Code.
The court erred in instructing the jury as to interest on the
amount found due on the rejected prunes from the date of their
rejection, if found to be unjustifiable.  The rule for damages in
such case is laid down in sections 3311 and 3357 of the Civil Code,
which must be taken together, and exclude the allowance of inter-
est, and must govern as to that subject matter, to the exclusion
of the general rule of interest in section 3187, which is in a
different chapter.

APPEAL from a judgment of the Superior Court of Santa
Clara County, and from an order denying a new trial.   John
E. Richards, Judge.

The facts are stated in the opinion of the court.

Will M. Beggs, and R. C. McComish, for Appellants.

W. A. Bowden, for Respondent.

HALL, J.—This is an appeal from a judgment and also
from the order denying defendants' motion for a new trial.

The defendants demurred to the complaint both generally
and specially, and the first point to be considered concerns
the action of the court in overruling this demurrer.

Plaintiff and defendants entered into a contract June 12,
1907, for the sale by plaintiff to defendants of a crop of
prunes grown in 1907.   The contract is in writing, and the
facts pertinent to this discussion as set out in the complaint
are as follows:

"Moulton's Switch, Santa Clara Co., Cal.
"6/12, 1907.

"Received from the San Tomas Drying and Packing Co.
the sum of One dollar ($1.00) as part of purchase money for
the following described fruit, viz.: The entire crop of dried
Fr. prunes, season 1907, and estimated at 100 tons, and grown
and dried on the orchard known as Morrell Ranch-Wrights,
f. o. b. cars Wrights, tested at Wrights.   Prunes to be on

the five point, with one dollar per ton to be added to basis price for each and every point that the prunes average larger than the five point, and one dollar per ton to be deducted from basis price for each and every point that the prunes average smaller than the five point. (It is understood by the five point that prunes must run 35—45—55—65—75—85—95 —105—115 per pound.) All fruit to be sound and merchantable and well dried, free from slab, of choice quality and delivered f. o. b. packing house, situated on the Infirmary Road, Santa Clara Co., California, packed in sacks furnished by buyer, original condition as taken from the drying yard. . . .

"San Tomas Drying and Packing Company agrees to pay balance of purchase money as soon as the delivery is completed and sizes determined.

"Delivery to be made as directed, final delivery before Nov. 30th, 1907. . . .

"Buyers, San Tomas Drying and Packing Co.

"For account of Balfour, Guthrie & Co.

"per H. BOOKSIN, JR.

"Seller, J. B. Morrell."

It is alleged that defendants subsequently in writing extended the time for performance by plaintiff to the first day of May, 1908; that the entire crop of dried prunes referred to in the contract amounted to 172,698 pounds, and that under the contract defendants agreed to pay therefor the sum of $6,004.37; that plaintiff delivered to defendants and defendants accepted and received 134,132 pounds of said prunes and no more.

"That on the fifteenth day of April, 1908, the said plaintiff offered and tendered to said defendants the remainder of said prunes, viz., 38,566 pounds thereof, and then and there offered to deliver the same to the defendants according to the terms of said contract."

That defendants refused, and ever since have refused, to accept the same or any thereof.

"That on Saturday, April 25, 1908, having first given the defendants reasonable notice of the time and place of resale, the plaintiff resold the said 38,566 pounds of prunes at public auction for and on account of said defendants for the sum of $1,285.45, leaving a deficiency of $870.89, no part of

which has been paid." "That the expenses attendant upon such resale amount to the sum of $309.39, no part of which has been paid."

It is first urged that the general demurrer should have been sustained because the contract provided for delivery to be made as directed, and that the resale took place before the expiration of the time of performance given by the extension pleaded. We do not think this point well taken. The time of performance under the original contract expired November 30, 1907. Until this time arrived defendants could control the time of delivery. The extension pleaded was an extension of time for plaintiff to perform, and when plaintiff within that time offered to perform, defendants were bound to accept if in other respects the offer was in accordance with the contract. Upon defendants' refusal to accept the tendered fruit, plaintiff was justified in reselling the same.

It is also urged that it cannot be ascertained how the deficiency of $870.80 was determined. For this reason it is separately alleged in the demurrer that the complaint is uncertain and ambiguous.

Nowhere in the complaint is there any statement as to what was the agreed price under the contract between plaintiff and defendants of the rejected 38,566 pounds of prunes. What amount defendants under the contract were obligated to pay for such rejected prunes is nowhere stated. Neither is there any general statement of damages to plaintiff in any given sum resulting from defendants' breach of contract. While it appears from the contract set out in the complaint that defendants agreed to pay a basis price of "4¾," it also appears that the actual price to be paid varied at the rate of one dollar per ton below or above such price as the prunes should vary in size below or above the size understood as the standard for the basis price. Nowhere does it even appear what size of prunes is taken as the standard for the basis price. And no attempt is made to state what sizes of prunes were tendered and rejected. So even if we assume that the words "price 4¾ basis" means 4¾ cents per pound, this only informs us that such is the price of prunes that are of the size taken as the standard for the basis price. But it also appears that this price is to be varied with the varying sizes of the prunes delivered. It is thus impossible to

determine what was the amount to be paid under the contract for the 38,566 pounds of rejected prunes. The amount to be paid for the rejected prunes is not stated in a lump sum nor at all, nor are any data given from which the amount may be ascertained by calculation.

While it is stated in the complaint that the rejected prunes were resold for $1,285.45, *"leaving a deficiency of $870.80,"* it is not stated that this is the deficiency or difference between the contract price and the proceeds of the resale, nor are any data given from which it can be determined that it is.

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be: 1. If the property has been resold, pursuant to section three thousand and forty-nine, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale." (Civ. Code, 3311.) The pleader probably intended to bring himself within this section, but has failed to show with sufficient certainty or at all that the *deficiency* referred to is the difference between the contract price of the rejected prunes and the amount for which they were resold. The court therefore erred in overruling the demurrer.

The jury returned a verdict for $1,172.29 in favor of plaintiff, which was reduced by the court to $1,080.19. The sufficiency of the evidence to support the verdict is attacked upon the ground, among others, that there is no evidence to show what was the amount due from defendants to plaintiff for the 38,566 pounds of rejected prunes. The plaintiff in his proof seems to have been consistent with his pleading; for while he nowhere in his pleading showed what was the amount that should have been paid by defendants for the 38,566 pounds of prunes, so in his evidence he made no proof thereof. There is no evidence in the record as to what should have been paid under the contract for the 38,566 pounds of prunes. While it is admitted by the pleadings that the basis price was 4¾ cents (?) per pound, neither the pleadings nor the evidence shows what size of prunes was taken as the standard for the basis price, and neither the pleadings nor the evidence shows what were the sizes of the prunes rejected.

As before stated, the price to be actually paid for the prunes varied from the basis price as the prunes varied in

size from the standard size taken for the basis price. Nowhere in the evidence does anyone attempt in general terms even to state what was due under the contract for the rejected prunes, and no data are given from which the amount may be determined by calculation. Where, as here, the plaintiff seeks to recover the difference between the contract price and the amount realized on a resale of personal property it is essential to prove what was due under the contract of sale as well as what was realized on the resale, in order to determine what was such difference. It is true that the record does show that the bulk of the rejected prunes were resold at a basis of $2\frac{1}{2}$ cents per pound, which is $2\frac{1}{4}$ cents less than the contract basis. But this datum is not sufficient, for we are still in the dark as to what were the sizes of the rejected prunes and what was the actual contract price therefor.

For these reasons we think that the evidence does not sustain the verdict.

As a matter of fact, the complaint in express terms alleges that the amount agreed to be paid by defendants for the entire crop sold under the contract was the sum of $6,004.37, and the evidence shows without dispute that defendants in fact paid for the prunes accepted $6,455.71. If the allegation is correct that the contract price of the entire crop amounted to but $6,004.37, then the proof shows without dispute that the plaintiff has been paid more than was due him for the entire crop. The plaintiff while on the stand as a witness suggested that the allegation in the complaint was probably a mistake, but no effort was made to amend or correct the allegation.

The contract calls for prunes grown and dried on the Morrell ranch. The plaintiff was in fact working under leases three ranches, to wit, the Morrell home place, the Norton ranch and the Rhodes ranch, and the prunes in question were grown on the three places. It is claimed that the court erred in permitting the plaintiff to show by oral testimony that the term "Morrell ranch" in the contract meant the places then leased and worked by Morrell, the plaintiff. We think, however, that the court did not err in so doing. The three places were leased and in the possession of Morrell the plaintiff. The contract estimated the entire crop of dried prunes at 100 tons. The crop in fact produced on the three ranches did

not amount to that quantity. There was such an ambiguity in the contract as to authorize oral evidence to identify the subject of the contract. The evidence objected to simply proved that by the term "Morrell ranch" the parties meant the orchards leased and worked by Morrell.

Much evidence was given to the effect that the rejected prunes did not meet the requirements of the contract as to quality, but upon this point there is a conflict in the evidence. The preponderance of the evidence upon this point seems to be against the plaintiff, but this court cannot disturb the verdict of the jury for this reason.

The fact that a portion of the prunes grown on the Norton place were dried on a neighboring place does not seem to be a material variation from the requirements of the contract.

After permitting the plaintiff to prove that the rejected prunes were finally bought for the Presto Fruit Company after examination and acceptance by them, the court sustained objections to questions on cross-examination put by defendants as to what was done with the prunes, and whether or not prunes could be used in the process employed by the Presto Company that would not be suitable for shipping in boxes. In this we think the court unduly restricted the right of cross-examination. The evidence in chief was manifestly offered to support the proposition that the prunes were merchantable and complied with the contract. The weight of this evidence might have been materially affected if on cross-examination it should have been shown that the prunes in question were used in a process not requiring choice fruit.

The court erroneously instructed the jury that they might allow interest upon any amount that they might find to be due plaintiff from the date of the rejection of the prunes, if they found the rejection to have been unjustifiable.

The rule for fixing damages in such a case as this is laid down in sections 3311 and 3357 of the Civil Code. The first of those actions fixes the damages at the difference between the contract price and the net proceeds of the resale, where, as in this case, a resale is made pursuant to section 3049 of the Civil Code, and makes no provision for interest. The second section (3357) provides that "The damages prescribed by this chapter are exclusive of exemplary damages and interest, except where those are expressly mentioned." The

two sections are in the same chapter and must be read together, and so read, clearly exclude the allowance of interest. The rule given in the instruction of the court accords with section 3287 of the Civil Code, but this section is in a different chapter from that containing sections 3311 and 3357, which are specially applicable to this case and must govern. (*Hewes* v. *German Fruit Co.*, 106 Cal. 441, [39 Pac. 853].)

The judgment and order are reversed, and the court below is directed to sustain the demurrer, with leave to plaintiff to amend if so advised.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1910.