### José Ruiz Sevilla, Plaintiff and Appellee, *v.* Angel Umpierre, Defendant and Appellant.

No. 6398. Argued January 15, 1935.—Decided December 23, 1935.

*Celestino Iriarte* and *F. Fernández Cuyar* for appellant.  *R. Rivera Zayas* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

This was an action by a landlord to recover damages from his tenant by reason of the destruction by fire of the demised house.  At the trial the proof of damages was limited to the value of the house at the time of the fire.  The principal controversy was whether the defendant had overcome the presumption established in the Civil Code that the loss was due to his fault.  The various sections on which plaintiff relied were as follows:

"Section 1451.  The lessee must return the estate at the expiration of the lease in the same condition in which he received it, except what may have been destroyed or impaired by time or by unavoidable reasons.

"Section 1452.  If, at the time of the lease of the estate, the condition of the same was not mentioned, the law presumes that the

lessee received it in good condition, unless there be proof to the contrary.

"Section 1453. The lessee is liable for the deterioration or loss suffered by the thing leased, unless he proves that it took place without his fault."

*Ramírez* v. *Muñoz et al.*, 33 P.R.R. 350 and *Del Valle* v. *M. González & Co.*, 39 P.R.R. 739, as conceded by appellant, settle the point that plaintiff may rely on the presumption of negligence and that the burden falls on the defendant to show due care. This we think he failed to do.

The house was located in the ward of Hato Tejas of Bayamón. The fire took place on the 16th of November, 1930. The plaintiff showed the existence of the lease, and as a witness testified that he lived near the destroyed premises; that on the night of the fire he was notified, went to the scene and found no one there. It transpired that defendant had turned over the house to his son, who occupied a part of it with his wife and children. According to appellee, this in itself was a violation of the contract prohibiting a subleasing of the premises.

Various witnesses testified that the son took good care of the house. The court, after resuming all the evidence, said:

"The defense that the fire occurred in a sudden and inevitable manner and without fault or negligence on the part of the defendant we do not consider to be proved at all. There is not the slightest appearance of evidence brought by the defendant to maintain his contention."

After reviewing the code and some of the jurisprudence, the court continues:

". . . And our Supreme Court says, in approving the said commentaries, the legal precept is just, because it is easy for the lessee to prove the cause of an excusable fire as he is in possession of the property, and this lessor could not do because he is not in the same position. It also adds, 'because a great number of fires occur through the carelessness or negligence of the lessee.' We do not doubt that it is so recognized by the defendant himself in not even

trying to prove his defense. The prohibition to sublease, which has been violated by the lessee, the discovery of a can containing burning matter the day before the fire and the failure to take any steps to investigate the matter; the little diligence shown in order to put out the fire, if this was possible; and other circumstances that might have escaped our analysis, lead us to the conclusion that there is no evidence in support of the defenses of the defendant, relieving him from responsibility.''

The first assignment of error is:

''The lower court committed a manifest error in weighing the evidence, specially when holding that 'there is not the slightest evidence' to support the contention of the defendant, and it likewise manifestly erred in holding 'that there is no evidence whatever relieving the defendant from responsibility'.''

The evidence that appellant resumed in his brief as tending to show care may be transcribed as follows:

''The first witness introduced by the defendant was Nicolás Durán, clerk of the District Court of Bayamón, who on the day of the fire went by the house with his wife and children and stopped to see the glare and the smoke. He and his father-in-law were the first to arrive at the place and remained there until the arrival of the son of the defendant and his wife. The son of the defendant tried to enter the house but on opening the door a cloud of smoke burst forth, notwithstanding which he tried to enter and was prevented by the witness who grabbed his arm and pulled him out.

''The plaintiff admitted afterwards that the wife of witness Durán would testify similarly. The next witness was José C. Umpierre, a son of the defendant, who at the time of the fire was living in the house with his wife and children. He stated that on the night in question he and his wife left for Bayamón in an automobile, taking also his children. On the way back they stopped as usual at a shop and bought provisions, and immediately afterwards they heard shouts of fire. On reaching the house he found a lot of people, took out the key, opened the door and tried to go in, but somebody from behind held him and pulled him violently. The witness would have gone in, notwithstanding the smoke and the fire, but was prevented by being pulled back. He then went on testifying that that afternoon he had been absent from the house for only one hour, that he had left it perfectly locked, had taken the usual pre-

·cautions before leaving, searching the whole house and then locking it; that there was nothing liable to cause damage and that they always took such precautions on going to Bayamón. He testified further that they used charcoal for cooking and ironing, using flatirons. He did not make use of electric contrivances. He was paying no rent and was living the house with the consent of the defendant, his father. He had furniture in the house, specially a new set which had cost him five hundred and odd dollars. He also had in the house other property pertaining to his commission business. The total value of his loss by the fire amounted to one thousand and odd dollars. Several of the windows of the house were in bad condition and he had had to nail them for greater safety. He then stated that two days before the fire took place he had discovered underneath the concrete staircase a can from which ·smoke was coming out and was covered by a piece of sackcloth; that the witness with the help of the defendant's chauffeur grabbed it and threw water on it, without attaching to the incident much importance as the house had not been in danger.

"The next witness was José Oquendo who was also living in the house at the time of the fire. When the witness began to testify the plaintiff admitted that the testimony of the witness would be similar to that of defendant's son as regards the manner of cooking, the shape of the house, the care taken of it and the way of living of the tenants. The plaintiff likewise admitted that María Vázquez de Umpierre, the wife of defendant's son, would testify like her husband as regards the way of keeping house, the manner of cooking, their way of living, the care used by them and what happened on the night of the fire. She stated, however, that on reaching the house that night and while the same was on fire, her husband tried to go in and opened the door, but that Durán stopped and prevented him, warning him that he was going to get burnt. The witness stated that they had not been absent long and that on leaving they had left everything locked and in good shape and that they had lost in the fire the furniture of the parlor, bedroom and dining room (a new set that had cost $558); lamps, a sewing machine, jewels, etc. At the time of the fire the witness was pregnant and had everything prepared to go to the hospital and all this was also burnt. That day was a Sunday and it was customary on Sundays not to cook but to eat light things. Before leaving that day she had put everything in order, had locked everything and had seen to it that the charcoal fire in the kitchen had been completely put out. The

lighting was not by electricity. Cross-examined by attorney for the plaintiff, the witness stated that the can found two days previously did not contain kerosene, it was a can originally used for selling kerosene; that her husband asked her about that and they then summoned the defendant and the laborers who grabbed the can, took it to the front part and threw water on it; that nobody thought of the possibility of anybody trying to set the house on fire.

"The next witness to testify was Ignacio Carballeira, municipal judge of San Juan and son-in-law of the defendant. He knew the house in question and testified that the defendant used it as a dwelling; that the witness frequently used to go and spend the week-end there, and that the defendant looked after the house in the same way and manner and took the same care of it as he did of his own property at Martí Street, Bayamón. (Transcript of the Evidence, p. 103.) He also stated that the defendant kept the house in perfect condition, as a diligent father of a family.

"Manuel Blanco testified as to his having gone and delivered the said property to the plaintiff in behalf of the defendant. The defendant then took the stand and stated that he used to reside in the house with his son and the latter's family; that he used to look after the house as if it were his and it was the custom to cook with charcoal; there were not any electric contrivances or motors in it except the usual lighting; there were no laboratory apparatus or any others liable to cause fire; they used old flatirons and not electrict ones, and there was a motor on the estate, but it was in the well away from the house. The incident of the can filled with tobacco stems was attributed to children's pranks; no importance was attached to it since there was no ground for suspecting of anybody wishing to injure them. He stated that he had been unable to ascertain the cause of the fire, notwithstanding having gone to the police (to chief López de Azúa). His son lost all his possessions on account of the fire, even his clothes."

Now, the court may be considered to have said that there was no evidence to overcome the presumption and perhaps there may be a little. We, however, feel bound to hold that the presumption of negligence was not overcome. Appellant maintains that he does not have to prove care by a preponderance of the evidence, but he does have to do something more than was done in this case.

The defendant not only turned over the house to his son but on at least one other period he had subleased the premises to a person who in turn permitted others to occupy it for purposes not consistent with due care. Also, there was no evidence that after the discovery of the tin of gasoline, although the defendant had other persons in his employ, anything was done to take special care of the house. All this does not make out a case of the care required of a good father of a family.

■■ The position of a lessee by virtue of the recited presumption is very similar to that of a defendant where a plaintiff has established a prima facie case to support the contentions of a complaint.

Section 100 of the Law of Evidence sets forth:

"A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted the judge or jury are bound to find according to the presumption."

Some of the other assignments related to the damages. The court awarded $3,850, with interest from the time of filing the complaint. There was evidence tending to show that the house had a greater value and some that it had less. We can not find that the court was not justified. Nor do we find that it was mistaken in estimating as damages the reduced value of the house by reason of the fire.

The second assignment of error is as follows:

"The trial court erred in refusing to admit evidence as to the value of the property salvaged from the fire, thus materially injuring defendant's interets."

We do not find that this is a sufficient assignment, as it gives no idea of what things were saved. The appellant does not convince us that the parts saved could have materially affected the estimate made by the court.

■ On the other hand, we think the court erred in fixing interest from the time of the filing of the complaint, subject-

matter of the fourth assignment of error. In no sense could the damages found here be considered to be liquidated as indicated by section 1061 of the Civil Code (1930 ed.) This is the conclusion from Manresa in his commentaries upon section 1108 of the Spanish Civil Code. The appellant had no direct intervention in causing the deterioration of the value of the house other than the one that would follow from the presumption invoked. The same conclusion is supported by the following jurisprudence from California: *Brady* v. *Wilcoxson,* 44 Cal. 239; *Howes* v. *Germain Fruit Co.,* 106 Cal. 441, 39 Pac. 853; *Ferrea* v. *Chabot,* 121 Cal. 233, 53 Pac. 689, 1092.

As the case must be partially reversed and as we are not at all satisfied that the defendant did not have a debatable case, the award of costs should also be reversed.

The judgment will be reversed in so far as it awards interest from the date of the filing of the complaint and in so far as it gave costs and otherwise affirmed so that the damages should be adjudged for the sum of $3,850.00, with interest from the date of the judgment.