[No. E010598. Fourth Dist., Div. Two. June 2, 1994.]

ABDUL KARIM AL-HUSRY et al., Plaintiffs and Respondents, v. NILSEN FARMS MINI-MARKET, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II.A., II.B.1, 2, 3, and 5, and III.

## Counsel

Dill & Showler, Scott Showler and Stephen E. Anderson for Defendants and Appellants.

Caldwell & Kennedy, Terry E. Caldwell and Ruth Ann Magnuson for Plaintiffs and Respondents.

## Opinion

**TIMLIN, J.**—This appeal arises from a judgment for the prospective buyers, Abdul Karim Al-Husry and his son Ghassan Al-Husry (collectively the Al-Husrys, or the buyers), of a minimarket business—including the real property on which the market was located, and an off-sale liquor license for the business, together with the liquor inventory—against the prospective sellers, Nilsen Farms Mini-Market, Inc., David Nilsen, and Bernice Nilsen (collectively the Nilsens, or the sellers.)[1]

The trial court in its statement of decision found that the sellers breached the purchase and sale agreement by failing to execute amended escrow instructions which the buyers proposed on May 12, 1986 (proposed amended instructions) after the Department of Alcoholic Beverage Control (ABC) had refused, based on the original escrow instructions, to accept the buyers'

---

[1] The owner of the minimarket business was Nilsen Farms Mini-Market, Inc. The owners of the real property were David Nilsen and Marlena Nilsen. The owner of the liquor license and liquor inventory was David Nilsen.

application to transfer the business' liquor license to them. It also found that the sellers breached the agreement by subsequently refusing to proceed with the sale.

The trial court awarded the buyers $151,129 in total damages. This sum included lost profits of the business calculated from the "effective date" upon which, the trial court found, the sellers failed to execute the proposed amended instructions. It also included prejudgment interest on certain items of damages, particularly on the buyers' $100,000 deposit into escrow. The $100,000 remained in escrow even after the sellers refused to proceed with the sale. Later, the buyers canceled escrow themselves to get it back.

The sellers appeal. They contend that:

1. With respect to liability:

a. There was insufficient evidence to support the judgment that sellers breached the agreements to sell either by failing to execute the proposed amended instructions, or by refusing to proceed with the sales and instead canceling the escrows on July 9, 1986.

b. The judgment against one of the defendants, Bernice Nilsen, was error because she was not a party to any of the purchase and sale agreements.

2. With respect to damages:

a. The damages, which should have been measured under the benefit of the bargain rule, erroneously included the following items which were awardable, if at all, only on a rescission theory:

(1) An appraisal fee paid by the buyers, plus prejudgment interest.

(2) Prejudgment interest on the buyers' $100,000 deposit into escrow; and, even if interest were proper, the trial court awarded interest on the deposit for a time period not supported by the evidence.

b. There was insufficient evidence to support a judgment for lost profits damages (lost profits), and the trial court admitted inadmissible evidence regarding lost profits.

c. The trial court erroneously calculated the amount of lost profits (assuming there was substantial evidence of lost profits) in that:

(1) It calculated lost profits from the "effective date" upon which, it found, the sellers failed to execute the proposed amended instructions, thus

ignoring the fact that even if the sellers had executed the proposed amended instructions the ABC still would have had to approve such instructions and the liquor license transfer, and then the escrows would have had to close, before the buyers could have begun making any profits.

(2) It awarded lost profits beyond the date upon which it found the buyers mitigated damages by purchasing a different business.

(3) In arriving at the net lost profits, it failed to subtract the postclosing payments the buyers would have had to make to the sellers as "debt service" on the promissory notes payable by the buyers to the sellers as part of the purchase prices.

d. The award of prejudgment interest on lost profits was error because the amount of the lost profits was not sufficiently certain.

e. The trial court erred in compounding the prejudgment interest awarded on various items of damages, including lost profits.

We hold that the trial court's finding that the sellers breached the purchase and sale agreements by failing to execute the proposed amended instructions was indeed not supported by substantial evidence and was error as a matter of law. However, the trial court's additional finding that the sellers (except for Bernice Nilsen, who was not a party to the escrow instructions) breached the agreements by refusing to proceed with the sales after July 9, 1986, was supported by substantial evidence.

David Nilsen had in fact breached the agreement earlier, by failing to pay for and complete a necessary appraisal. He and Nilsen Farms Mini-Market, Inc., also had breached the agreement earlier by continuing to hold title to the liquor license and the various other assets of the business in such a way that the ABC would not approve the transfer of the liquor license to the buyers, and by failing to cure this problem. These breaches by the sellers excused further performance by the buyers.

However, although the trial court correctly found the sellers liable to the buyers for breach of the agreement, it erroneously calculated damages in certain respects. Moreover, the finding that Bernice Nilsen was one of the sellers and hence liable as such for breach of contract is error, as the Al-Husrys concede.

We therefore will affirm the judgment insofar as it provides that the sellers, with the exception of Bernice Nilsen, are liable to the buyers for

damages resulting from the sellers' breach. But we will reverse the judgment as to its adjudication of certain damages and the amount thereof and remand with directions that the trial court conduct further proceedings with respect to ascertaining damages.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II.

### DISCUSSION

A. *Liability Issues—Breach of Contract**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Damages Issues—Breach of Contract*

 1.-3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

 4. *The Award of Prejudgment Interest on the Al-Husrys' $100,000 Deposit Into Escrow.*

▆▆▆ The Nilsens contend that the trial court erroneously awarded damages awardable only on a benefit of the bargain basis, i.e., lost profits, and also damages awardable only on a rescissory basis, i.e., prejudgment interest on the Al-Husrys' $100,000 deposit into escrow. We understand they start from the principle that damages caused by a breach of a purchase and sale contract are limited to providing the nonbreaching party the benefit of its bargain. They thereupon assert that, if both the Al-Husrys and the Nilsens had fully performed under the escrow instructions, the Al-Husrys' deposit would have been paid to the Nilsens as part of the purchase prices and the Al-Husrys would not be entitled to recover their deposit. The Nilsens then argue from such legal and factual premises that a fortiori the Al-Husrys were not entitled to recover prejudgment interest on their deposit. The Nilsens conclude that to award prejudgment interest on the $100,000 payment into escrow toward the purchase prices and also to award lost profits amounts to

---

*See footnote, *ante*, page 641.

a duplication of damages and results in an improper double recovery by the Al-Husrys.

We disagree. ▮▮ It is settled that when a seller of real property fails or refuses to convey, a buyer who has made advance payments toward the purchase price may recover interest on those payments as damages for breach of contract. (*Vineland Homes, Inc.* v. *Barish* (1956) 138 Cal.App.2d 747, 760 [292 P.2d 941]; *Rasmussen* v. *Moe* (1956) 138 Cal.App.2d 499, 504 [292 P.2d 226]; Civ. Code, § 3306.) This rule is not limited to sales of real property; it applies to sales in general. For example, in *Tomlinson* v. *Wander Seed & Bulb Co.* (1960) 177 Cal.App.2d 462 [2 Cal.Rptr. 310], the buyer made a down payment on 2,000 pounds of seed, but the seller delivered only 744 pounds. The trial court awarded the buyer, among other damages, the amount of his down payment (minus the price of the 744 pounds), plus prejudgment interest, and lost profits. These elements of the award were affirmed on appeal. (*Id.* at pp. 472-474 [lost profits], 476 [interest on down payment].)

This rule is necessary to distinguish appropriately between two types of seller conduct. When a buyer makes advance payments to a seller who later fails or refuses to convey, the seller should at least return the buyer's payments promptly. If instead the seller withholds the buyer's advance payments, the buyer loses the use of the money, and the seller wrongfully gains from its use of it. Where the amount of the advance payments is fixed and certain, the rationale for denying prejudgment interest to a plaintiff-buyer whose damages are unliquidated does not apply and prejudgment interest should be awarded under Civil Code section 3287, subdivision (a). By contrast, under the rule for which the Nilsens contend, a defaulting seller would have a positive incentive to retain any advance payments, reaping interest on them during litigation and until entry of judgment.

▮▮ The crucial question for the purpose of this appeal is how this rule entitling a nonbreaching buyer to interest on his or her purchase money deposits into escrow interacts with the rule that the nondefaulting party's damages are limited to the benefit of his or her bargain. (Civ. Code, §§ 3300, 3358.) We hold that there is no conflict between the two rules because the benefit of the bargain measurement of compensatory damages does not apply to an award of prejudgment interest on the compensatory damages.

The "Measure of Damages" is the subject of sections 3300-3360 of the Civil Code, which make up chapter 2 of its division 4, part 1, title 2. Section 3300, the first section of that chapter, provides that: "For the breach of an obligation arising from contract, the measure of damages . . . is the amount

which will compensate the party aggrieved for all the detriment proximately caused thereby . . . ." Section 3358, in the same chapter, provides that: *"Except as expressly provided by statute,* no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides." (Italics added.)

Civil Code section 3357, however, still in the same chapter, states that: "The damages prescribed by this Chapter *are exclusive of* exemplary damages and *interest,* except where those are expressly mentioned." (Italics added.) "Exemplary Damages" are dealt with in a different chapter, Civil Code chapter 1, at article 3, sections 3294-3295. Likewise, "Interest as Damages" is dealt with in chapter 1 of the Civil Code, at article 2, sections 3287-3291. Section 3287, subdivision (a) provides that: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation . . . *is entitled also* to recover interest thereon . . . ." (Italics added.)

Under this statutory scheme, an award of prejudgment interest as damages is governed exclusively by Civil Code sections 3287-3291 (except where such interest is expressly mentioned elsewhere). Under Civil Code sections 3300 and 3358, compensatory damages for breach of contract are limited to the benefit of the bargain. However, under Civil Code section 3357, these compensatory damages are distinct from whatever exemplary damages and interest may also be awarded.[14] Moreover, section 3358 applies "[e]xcept as expressly provided by statute." If a party "is entitled" to interest under the "Interest as Damages" statutory provisions, including section 3287, that entitlement is "expressly provided by statute" and not limited by section

---

[14]Two early cases suggested that section 3357, providing that compensatory damages under chapter 2 "are exclusive of exemplary damages and interest," means that a plaintiff who recovers compensatory damages under chapter 2 cannot recover interest under section 3287 (or, presumably, exemplary damages under Civil Code section 3294). (*Morrell* v. *San Tomas etc. Packing Co.* (1910) 13 Cal.App. 305, 312-313 [109 P. 632]; *Ellsworth* v. *Knowles* (1908) 8 Cal.App. 630, 635 [97 P. 690].) However, this interpretation of section 3357 has been rejected, at least in tort cases. (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 763 [192 P.2d 935]; *Taylor* v. *Wright* (1945) 69 Cal.App.2d 371, 386 [159 P.2d 980] [refusing to follow *Morrell* and *Ellsworth*].)

Both *Morrell* and *Ellsworth* cited *Hewes* v. *Germain Fruit Co.* (1895) 106 Cal. 441 [39 P. 853]. Yet *Hewes* held that a plaintiff *can* recover interest under *either* Civil Code section 3287, *or* any provision of chapter 2 specifically allowing interest as compensatory damages. (106 Cal. at pp. 447-448.) The *Hewes* court reversed an interest award because the applicable provisions of chapter 2 did not allow interest (*id.,* at pp. 447-448), and the plaintiff's damages were not sufficiently certain for interest to be awarded under section 3287. (106 Cal. at pp. 448-449.) By citing *Hewes,* the *Morrell* and *Ellsworth* courts implied that, as in *Hewes,* the damages in those cases were too uncertain for an interest award under section 3287. They therefore are best understood as holding that *if damages are uncertain,* and interest is not available under chapter 2, it is not available as prejudgment interest under section 3287.

3358. (*Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544, 590 [140 Cal.Rptr. 330] [§ 3358 does not limit interest awardable under § 3288].) Thus, sections 3300 and 3358 do not limit a party's right to receive interest under section 3287.

■ The Nilsens do argue indirectly that the Al-Husrys are not entitled to prejudgment interest on the $100,000 escrow deposit because they were not entitled to the return of the escrow deposit itself as damages. "[T]he *sine qua non* of payment of interest is the entitlement to some underlying sum made payable by the judgment." (*Santa Clarita Water Co.* v. *Lyons* (1984) 161 Cal.App.3d 450, 459 [207 Cal.Rptr. 698], second and third italics omitted.) Thus, the Nilsens would urge that the Al-Husrys had a right to receive the value of the business minus the unpaid portion of the purchase price, rather than a right to receive the deposit as such.[15]

■ Following a seller's refusal to convey property, the nondefaulting buyer may have an election of equitable remedies—specific performance or rescission. If the buyer can and does elect rescission, it is restored to the position it occupied prior to the contract of sale; this relief includes an award of any payments made toward the purchase price. The assumption that a buyer can recover advance payments of the purchase price *only* in a judgment for rescissory relief, and not in a judgment for breach of contract damages (benefit of the bargain), however, is mistaken.

If the buyer can and does elect specific performance, it receives the property, i.e., the business and real property. If alternatively the buyer elects damages as its remedy and not specific performance or rescission, the law substitutes in place of the buyer's right to the property: (1) the return of the purchase price, to the extent previously paid, and (2) the difference between the fair market value of the property and the purchase price (market-contract differential). (See *Abrams* v. *Motter, supra*, 3 Cal.App.3d at p. 842 [discussing effect of seller's election of damages upon buyer's default].)

Thus, if the sale is of real property, the buyer is statutorily entitled to receive "*the price paid*, and . . . the difference between the price agreed to

---

[15]This argument, of course, assumes that the value of the business was too uncertain to permit an award of prejudgment interest based on it. This assumption will be correct in many, although not all, purchase and sale cases. (See *Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 212-213 [195 P.2d 408, 4 A.L.R.2d 1380]; *Abrams* v. *Motter* (1970) 3 Cal.App.3d 828, 841-846 [83 Cal.Rptr. 855].) We, however, do not believe that a nondefaulting buyer's entitlement to prejudgment interest on its advance payments depends on whether the value of the property involved is or is not certain. Thus, we assume *arguendo* that the value of the business here was indeed uncertain for purposes of Civil Code section 3287, subdivision (a).

We note, however, that if here the value of the business was *certain* insofar as it was equal to the purchase price, then the Al-Husrys would clearly be entitled to prejudgment interest regardless of whether the $100,000 were characterized as their escrow deposit, or as the value of the business minus the unpaid portion of the purchase price.

be paid and the value of the estate agreed to be conveyed at the time of the breach [among other things], . . . and interest." (Civ. Code, § 3306, italics added.) Similarly, if the sale is of goods, the buyer is statutorily entitled to receive "*so much of the price as has been paid*" (Cal. U. Com. Code, § 2711, subd. (1), italics added) plus "the difference between the market price . . . and the contract price." (Cal. U. Com. Code, § 2713, subd. (1); see Cal. U. Com. Code, § 2711, subd. (1)(b).)

 Here, although the Al-Husrys eventually elected to recover damages, their damages cannot be characterized simply as the value of the business. Rather, they were entitled to recover, in addition to other consequential damages, (1) the return of their escrow deposit, with prejudgment interest thereon, plus (2) the market-contract differential.[16] They did eventually get back their escrow deposit, but only after they canceled escrow on February 23, 1987. Also, they received prejudgment interest on the deposit at about 5 percent instead of the legal rate of 10 percent per annum (Civ. Code, § 3289, subd. (b)). Thus, the Al-Husrys were entitled to an additional 5 percent prejudgment interest on the $100,000 escrow deposit.

The trial court awarded this 5 percent interest, however, for one year. The Nilsens contend that this one-year period is not supported by the record. They point out that from June 1, 1986, which the trial court used as the "effective date" of the Nilsens' breach, to February 23, 1987, when the Al-Husrys recovered their escrow deposit, is a little less than eight months. The Al-Husrys respond that interest should have been awarded for a longer period, namely one year and six months. Alas, they do not explain why.

We agree with the Nilsens. The trial court had no need to estimate or approximate the relevant time period. From February 23, 1987, and thereafter, Al-Husry indisputably had the use of his $100,000. An award of interest beyond that date was unjust enrichment. On remand, the trial court should calculate interest on the escrow deposit beginning with the date of breach and ending on February 23, 1987.

5. *The Award of Compound Prejudgment Interest.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[16]In this case, there was no evidence that the value of the business was any higher or lower than the contract price. The market-contract differential component of the Al-Husrys' damages therefore was zero.

*See footnote, *ante*, page 641.

## III.

## The Judgment Against Bernice*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.

## Disposition

The judgment is modified to provide judgment for defendant Bernice Nilsen against plaintiffs, the Al-Husrys. The judgment as so modified is partially affirmed insofar as it adjudicates that defendants David and Nilsen Farms Mini-Market, Inc., breached their escrow agreements with the Al-Husrys and are liable to them for damages resulting from the breaches.

The judgment is partially reversed as to the amount of damages adjudicated against the Nilsens, and the case is remanded with the following directions to the trial court: conduct further proceedings consistent with the views expressed in this opinion, limited to the issue of the damages to be awarded against David and Nilsen Farms Mini-Market, Inc. After the conclusion of such proceedings, enter judgment awarding those damages to which it finds the Al-Husrys are entitled solely against David and the Nilsen Farms Mini-Market, Inc., and not against Bernice.

Ramirez, P. J., and McKinster, J., concurred.

---

*See footnote, *ante*, page 641.