NICHOLS *v.* NICHOLAS ET UX.

[No. 234, September Term, 1957.]

*Decided May 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*David A. McNamee,* with whom were *W. Carroll Beatty* and ·*Beatty & McNamee* on the brief, for the appellant.

*Samuel J. DeBlasis,* with whom were *Oscar R. Duley* and *Duley & DeBlasis* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Prince George's County requiring the specific performance of an option agreement to buy *made between* John and Mary Nichols (the Nicholses *or* Mary Nichols) and Peter and Clara Nicholas (the Nicholases).

In 1952, John and Mary Nichols were the owners, as tenants by the entireties, of a parcel of land in Prince George's County. They lived in a dwelling on the property and operated in other buildings on the premises the Canary Inn, the Canary Trailer Camp, the Canary Cottages, and the Canary Liquor Store.

On March 28, 1952, the Canary Inn was leased to Donald Chittenden and his wife (the Chittendens) for a term of five years beginning May 1, 1952. On August 13, 1952, the Nicholses leased the Canary Liquor Store to the Nicholases. Two weeks later, on August 30, the Nicholses and the Nicholases entered into an option agreement whereby the former granted to the latter an *option* to purchase the Canary Inn for $7,000 "when and only when the present lessees [the Chittendens] of the Canary Inn give up their lease or refuse to renew

it upon its expiration." Pursuant to the option agreement, the Nicholases, over a period of years, extending from September 1, 1952, to January 10, 1957, paid various sums of money [1] on account of the purchase price to the Nicholses or to Mary Nichols.

In the meantime, the five-year lease of the Canary Inn was assigned by the Chittendens on February 10, 1953, with the express consent of the Nicholses, to Christopher Waltemeyer. John Nichols died on March 13, 1953. Other assignments of the original Chittenden lease followed, all with the express consent of Mary Nichols.

On June 14, 1957, the Nicholases filed suit against Mary Nichols for the specific performance of the option agreement. At the time this suit was instituted, the Canary Inn was being operated by Elmer and Julia Carr, who, on June 1, 1955, had obtained an assignment of the lease, and in March of 1957, a five-year extension of the original Chittenden lease, which expired April 30, 1957. At the same time the lease was extended, Mary Nichols tendered to the Nicholases a refund of all payments made under the option agreement, aggregating $4,000, but the Nicholases refused to accept a refund and instead brought this action for specific performance. The Nicholases have continued to operate the liquor store.

Mary Nichols insists that since the express terms of the option limited the time within which the option to buy could be exercised to the duration of the Chittendens' tenancy, the Nicholases lost their right to exercise the option when the Chittendens assigned their lease in February of 1953. In the alternative, it is suggested that this action for specific per-

---

1. Eight payments, aggregating $4,000, were paid on account as follows:

| | | |
|---|---:|---:|
| September 1, 1952 | $ 50.00 | |
| October 1, 1952 | 1,000.00 | |
| August 3, 1954 | 450.00 | |
| February 3, 1955 | 500.00 | |
| August 1, 1955 | 500.00 | |
| February 18, 1956 | 500.00 | |
| September 8, 1956 | 500.00 | |
| January 10, 1957 | 500.00 | $4,000. |

formance is premature because the extended lease is still in force and does not expire until April 30, 1962. On the other hand, the Nicholases contend that Mary Nichols waived the time provision of the option agreement by accepting installment payments on account of the purchase price until January 10, 1957, and that they are entitled to specific performance now.

We think it is clear that the Chittendens gave "up their lease" of the Canary Inn on February 10, 1953, when they, with the consent of the Nicholses, assigned the lease to Waltemeyer. It follows that February 10, 1953, was the date—or within a reasonable time thereafter—on which the Nicholases should have exercised their option to purchase the Inn. The record does not show on what date, but the Nicholases must have tried to exercise the option to purchase sometime between March of 1957 and June 14, 1957. It was in March of 1957 that the Carrs received from Mary Nichols the five-year extension of the original Chittenden lease which expired April 30, 1957, and it was on or about the same time that Mary Nichols tendered the Nicholases a refund of the payments—totaling $4,000—made under the option agreement. The suit for specific performance was filed on June 14, 1957. The only question for us to decide is whether the Nicholases were still entitled to purchase the Inn when suit was filed. The answer depends on whether Mary Nichols waived prompt payment of the balance of the purchase money by continuing to receive payments on account thereof from time to time after February 10, 1953, and until January 10, 1957.

In 3 *Corbin, Contracts* (1951), Sec. 754, it is said:

"[T]he continued recognition of the contract as mutually valid and operative will prevent the obligee from asserting the obligor's existing default as a complete discharge of his own obligation. The acceptance of a delayed payment, whether of part or all of the amount then due, without any notice of intention to claim a forfeiture or a discharge, is operative as a waiver with respect to the default that then exists."

The generally accepted rule is that a vendor in a contract to sell real estate waives the time provisions of such contract when he accepts payments on account of the purchase price after the expiration of the date stated in the contract of sale for the payment thereof. *Coughran v. Bigelow,* 164 U. S. 301 (1896), (acceptance by vendor of payment subsequent to due date was a waiver of right to rescind) ; *Dillard v. Ceaser,* 206 Okla. 304, 243 P. 2d 356 (1952), (purchaser entitled to specific performance despite failure to pay installments in time because seller had received and kept delayed payments) ; *Jandric v. Skahen,* 235 Minn. 256, 50 N. W. 2d 625 (1951), (silence with knowledge that delayed payment had been received by agent constituted waiver). See also *Powell v. Cannon,* 119 Cal. App. 2d 748, 260 P. 2d 202 (1953), (receipt of delayed payment of rent operated as a waiver of condition of payment on time).

*Corbin, op. cit. supra,* Sec. 755, states:

> "[I]f one promises to deliver goods (or to render other performance) on condition that the promisee shall pay a sum of money by a specified date, after that date has gone by without payment, the promisor is no longer bound by the contract. * * * Nevertheless, such a contractor has power to recreate his former duty—sometimes by a mere voluntary expression of waiver, and nearly always by continuing to render his own performance or by receiving further performance from the other party, with knowledge that the condition has not been performed."

Specifically, with regard to option contracts, see *Malmquist v. Peterson,* 149 Minn. 223, 183 N. W. 138 (1921), in which the time provision in an option agreement was held to have been waived by acceptance of payments after the expiration date. See also *Pearson v. George,* 209 Ga. 938, 77 S. E. 2d 1 (1953), where the failure of a tenant to pay rent on time did not preclude specific performance of his option to purchase for the reason that subsequent acceptance of delayed payment of rent operated as a waiver.

For Maryland cases as to the effect of a waiver of prompt

payment see *Lombardo v. Clifford Brothers Co.,* 139 Md. 32, 114 A. 849 (1921), and *Phillips Roofing Co. v. Maryland Broadcasting Co.,* 184 Md. 187, 40 A. 2d 298 (1944). See also *National School Studios v. Mealey,* 211 Md. 116, 126 A. 2d 588 (1956).

In the instant case it is conceded that Mary Nichols continued to accept payments on account of the purchase price after the date on which the Nicholases should have exercised their option to buy the Canary Inn. By so doing she waived the time provision of the option agreement, and it was proper for the chancellor to decree specific performance of the agreement.

*Decree affirmed, costs to be paid by the appellant.*