**Michael F. BEIRNE, Appellant,**

v.

**ALASKA STATE HOUSING AUTHORITY, a public corporation; Mrs. Isaac Waldrop, Jr.; Isaac M. Waldrop, Jr.; Joe Armstrong; Charles Johnson; and Tolbert E. Elliott, Appellees.**

**No. 1001.**

Supreme Court of Alaska.

May 5, 1969.

James K. Tallman, Anchorage, for appellant.

Paul B. Jones, Clyde C. Houston, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

DIMOND, Justice.

Appellee, Alaska State Housing Authority (referred to in this opinion as ASHA), advertised certain vacant lots for sale to the highest bidder. Two bids qualified under the invitation for bids—appellant's and appellee Mrs. Waldrop's.

Appellant was informed by ASHA that the property would be sold to Waldrop. Appellant then brought this action to enjoin the sale to Waldrop and to require

ASHA to sell the property to appellant. At the close of appellant's case appellees moved to dismiss the action on the ground that upon the facts and the law appellant had shown no claim for relief. The motion was granted and judgment on the merits was rendered against appellant. This appeal followed.

The bid opening was on February 3, 1965. Appellant bid $37,555 for the property. He accompanied his bid with a check for $3,755.50, and offered to pay the balance in monthly payments over a period of 59 months. At his request the check for $3,755.50 was kept by ASHA. Waldrop's bid was $40,000, accompanied by a check for $4,000, with an offer to pay the balance in annual payments over a period of five years.

On February 27, 1965, at a meeting of the board of ASHA, a motion was passed to the effect that Waldrop's high bid of $40,000 would not be accepted on the terms proposed. Waldrop was to be notified that ASHA would award the bid on a cash basis. At another meeting of ASHA's board on April 21, 1965, a motion was passed rejecting the time payment proposal of Waldrop and granting Waldrop a six month option to purchase the property for cash providing Waldrop would leave on deposit with ASHA the $4,000 check which she had submitted with her proposal.

In response to an inquiry from appellant, ASHA wrote to appellant on November 9, 1965 informing him that Waldrop had obtained financing and that the sale was being completed. The letter stated that appellant's check which he had submitted with his bid was enclosed.

On November 15, 1965, Waldrop delivered to ASHA a cashier's check in the amount of $36,000. This was deposited in ASHA's bank account on November 17, 1965. On this same day ASHA received a letter dated November 8, 1965 from appellant and his counsel offering $45,000 cash for the property. The offer by its terms expired on November 18, 1965. The letter was not accompanied by any tender of money.

Appellant's fundamental contention is that as a matter of public policy and basic fairness the property ought to have been sold to him because his offer of $45,000 was higher than Waldrop's bid of $40,000.

ASHA's original advertisement for bids was not an offer to sell the property but rather a request for offers to purchase it.[1] Until ASHA accepted either of the bids according to its terms, no contractual rights were created.[2] ASHA did not accept appellant's bid. Nor did it accept Waldrop's bid according to its terms. Instead, ASHA told Waldrop that her offer would be accepted only if payment were in cash instead of in periodic installment payments. This was a counteroffer by ASHA.[3]

One of the terms of ASHA'S counteroffer to sell the property to Waldrop was that the balance of $36,000 was to be paid within a six months period which ended on October 21, 1965. Since payment was not made by that date, Waldrop had not accepted the counteroffer according to its terms and her power to accept might be held to have expired.[4] But there are instances where an offeror, who has imposed a limit of time in his offer, does not care to insist upon it and may indicate a continued willingness to stand by the terms of the offer after the time limit has expired. In such a case there is a new offer[5] or a waiver of the termination

1. 1 A. Corbin, Corbin on Contracts § 24, at 71–72 (1963); 1 S. Williston, Law of Contracts § 31, at 82 (3d ed.1957).

2. 1 S. Williston, Law of Contracts §§ 31, 73, at 82, 238 (3d ed.1957).

3. Id. § 77, at 251–52.

4. Id. § 53, at 169.

5. Id. § 53, at 171.

date of the original offer,[6] and if the offer is accepted a contract is formed.

That is what happened here. On November 9, 1965, 19 days after the termination date of ASHA's counteroffer to Waldrop had expired, ASHA wrote to appellant stating that Waldrop had obtained the necessary financing and that the sale to Waldrop was being completed. This was evidence that ASHA was not going to insist upon the six months time period for payment by Waldrop—that the time limitation provision of the counteroffer had been waived. ASHA's counteroffer was accepted and a contract formed when Waldrop's check for $36,000, the balance of the $40,000 purchase price, was delivered to ASHA on November 15, 1965.

Appellant had originally offered $37,555 for the property. His letter to ASHA of November 8, 1965 was a new offer to purchase the property for $45,000. The letter was not received until November 15, 1965, and therefore ASHA could not have accepted that offer before that date.[7] But prior to November 17 a contract had been formed between ASHA and Waldrop. By the time ASHA knew of appellant's second offer it was bound to sell the property to Waldrop, and therefore could not accept appellant's second offer. There is nothing here that is unfair or against public policy. If a public authority agrees to sell to one who is the highest bidder at the time the agreement to sell is made, it cannot be charged with being unfair because it is not in a position to sell to a higher bidder whose offer is not made until after the transaction with the first bidder has been completed.

Upon the facts and the law appellant's case showed no claim for injunctive relief. The court did not err in entering a judgment of dismissal against appellant.

The property had been advertised for sale pursuant to a motion adopted at a meeting of the board of ASHA held in October 1964. The motion provided that the property be advertised for sale to the highest bidder "who will redevelop within one year." Appellant contends that the provision in the motion as to redeveloping the property showed that the property was situated within a "redevelopment project", within the meaning of that term as used in a statute dealing with that subject, and that the sale was not made in accordance with statutory provisions providing for the disposal of property in redevelopment projects.

The statute involved, AS 18.55.540, contemplates the existence of a redevelopment plan for property situated in a redevelopment project, and requires that the sale of the property by ASHA be in accordance with such plan. In addition, the statute provides that the property be sold or otherwise disposed of by ASHA "only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality" in which the property is situated.[8] Since there was no evidence of municipal approval of a redevelopment plan in this case, appellant contends that the sale of the property, not being in accordance with AS 18.55.540, was void.

The term "redevelopment project" is defined by statute as a work or undertaking to acquire and clear, and to sell, lease or otherwise make available land in a slum area or a blighted area.[9] The terms "slum area" and "blighted area" are defined as those areas which, because of certain conditions, are a menace or detrimental to the public health, safety, morals or welfare.[10] There is no evidence that

6. Nichols v. Nicholas, 217 Md. 79, 141 A. 2d 746, 748 (Ct.App.1958) ; 3A A. Corbin, Corbin on Contracts § 754, at 491–92 (1960).

7. "An offeree cannot actually assent to an offer unless he knows of its existence." 1 S. Williston, Law of Contracts § 33, at 92 (3d ed. 1957).

8. AS 18.55.540(a).

9. AS 18.55.950(17).

10. AS 18.55.950(3), (18).

the lots sold by ASHA were in a slum or blighted area. Such lots, therefore, would not be part of a redevelopment project, and there would be no necessity that the sale of the lots be in accordance with a redevelopment plan approved by a municipality pursuant to AS 18.55.540. That statute has no application here. The sale by ASHA was not void because of failure to comply with that statute.

The trial court, in its findings of fact, stated:

> The stipulated facts and testimony did not show secret, illegal and unlawful actions, collusion, conspiracy, fraud, bad faith, capriciousness or suppression of competitive bidding by defendants.

Appellant contends that this finding was erroneous, that appellant had ignored the six months period granted by ASHA to pay for the property for the purpose of waiting until the property had increased in value by reason of a rezoning, that ASHA knew Waldrop's purpose in this respect, that ASHA had willfully and knowingly sold the property to Waldrop at less than its fair value, and therefore, that the sale was null and void as against public policy.

The essence of appellant's argument is that there was fraud and collusion between appellant and ASHA to sell the property at less than its fair value. But appellant does not refer us to any evidence to support such a charge, and we find none in the record. There is no basis for upsetting the trial court's finding that fraud or collusion did not exist.

The judgment is affirmed.