[Civ. No. 513. First Appellate District.—August 13, 1908.]

E. A. ELLSWORTH, Respondent, v. W. G. KNOWLES and FRANK J. KNOWLES, Copartners Under the Name of KNOWLES BROS., Appellants.

CONTRACT TO SELL AND DELIVER APRICOTS—CONSTRUCTION—TIME OF PAYMENT—"SIGHT DRAFT AGAINST PAPERS."—Under a contract to sell and deliver a specified quantity of apricots at an agreed price, the words "August Shipment. Sight Draft Against Papers," do not contemplate delivery and payment as concurrent and dependent acts, but import a prior shipment by the seller, and the procurement of a bill of lading showing the shipment to be presented with a sight draft for payment.

ID.—PAROL EVIDENCE OF USAGE TO EXPLAIN CONTRACT.—If the language used in the contract be considered uncertain, it was proper to make it clear by parol evidence as to the usage of the trade or business in which the parties were engaged that payment was to be made on presentation of a bill of lading showing shipment. In such case usage is an instrument of interpretation, allowed by subdivision 12 of section 1870 of the Code of Civil Procedure.

ID.—PRIVILEGE OF BUYER—FURNISHING LACE PAPER—"ALLOWANCE"—WAIVER—NOTICE TO SELLERS.—A privilege given to the buyer to furnish lace paper "with the usual allowance," is a provision for the benefit of the buyer which he might waive, and which he did waive by notice to the sellers, while trying to obtain apricots to fill the contract, that they could use their own lace paper.

ID.—CONTRACT OF BUYER "TO FURNISH LABELS FREE"—TIME OF PERFORMANCE—ACTION FOR BREACH—ESTOPPEL.—Although the contract required the buyer "to furnish labels free," and it appears that they were furnished after the time appointed for the seller to ship the apricots; yet if they were furnished before they were needed and before the sellers had procured any apricots to fill the order, and were received and retained by them to be used in marking the boxes of apricots, while they were representing that they would fill the order, and were trying to do so, the sellers are estopped, in an action for breach of contract in furnishing no apricots, to urge that plaintiff did not comply with his contract to furnish labels free.

ID.—UNCERTAINTY IN COMPLAINT—WEIGHT OF BOXES—WAIVER—CERTAINTY IN CONTRACT PROVED—SUPPORT OF FINDING OF DAMAGES.—Though the complaint is uncertain and ambiguous in describing two distinct measures of weight of the boxes of apricots to be delivered, thus: "1850 12½ pound kilo boxes choice apricots," at an agreed rate, it appearing that twelve and one-half kilo boxes equal

twenty-seven and one-half pounds, and that their total weight of 1850 of them would be 50,875 pounds, while the total weight of 1850 twelve and one-half pound boxes would be only 23,125 pounds; yet whether the uncertainty was waived by failure to demur or to object to evidence, and the contract proved was certain in describing "1850 12½ kilo boxes, choice apricots" at the agreed rate, the court properly disregarded the word "pound" in the complaint, and a finding of damages based on the contract as to quantity is supported by the evidence.

ID.—IMPROPER ALLOWANCE OF INTEREST BEFORE JUDGMENT—MEASURE OF DAMAGES.—The court improperly allowed interest on the damages allowed for breach of the contract to sell and deliver the apricots, before judgment, from the date of the breach, no interest having been expressly mentioned in the contract. In such case, the measure of damages, exclusive of interest, is regulated by sections 3308 of the Civil Code and 3357 thereof.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. John E. Richards, Judge.

The facts are stated in the opinion of the court.

William B. Hardy, for Appellants.

Leo B. Archer, and Wm. P. Veuve, for Respondent.

HALL, J.—Appeal from judgment and order denying defendants' motion for new trial.

Plaintiff recovered judgment for the sum of $912.50, as damages for failure of defendants to deliver certain apricots bought by plaintiff from defendants in 1905, and which they never delivered. Plaintiff was engaged in the business of drying, packing and dealing in fruits at Niles, in Alameda county, while defendants were engaged in a similar business at San Jose, in Santa Clara county. The contract, the breach of which gave rise to this action, is contained in two letters, one sent by plaintiff to defendants, and one in reply sent by defendants to plaintiff. They are as follows: "Niles, Cal., July 6th, 1905.—Knowles Bros., San Jose, Cal. Dear Sirs:— We herewith confirm purchase from you of one car 1850-12½ kilo boxes of choice apricots at 5⅞ boxed, less 5%. Buyer to furnish lace paper with usual allowance for same; buyer also

ELLSWORTH v. KNOWLES. [8 Cal. App.

to furnish labels free. August shipment. Payment sight draft against papers. Respectfully yours, Edw. A. Ellsworth.'' And: "San Jose, Cal., July 8th, 1905.—Mr. E. A. Ellsworth, Niles, Cal.—Gentlemen:—Your favor of the 6th inst. to hand, confirming purchase of 1850 12½ kilo boxes Choice Apricots at 5⅞ cts. boxed, less 5%. Buyer to furnish lace papers with usual allowance, labels to be furnished by buyer free, August shipment, sight draft against documents. This is in order, and will receive our best attention. Yours very truly, Knowles Bros.'' The apricots were to be dried, and the price was 5⅞ cents per pound. About this there is no dispute.

Defendants never delivered the apricots, and though plaintiff sought to obtain a delivery of the apricots, and both wrote to and called on defendants, urging delivery, he never made any tender of payment therefor.

The principal point of controversy between the parties relates to the proper interpretation of the contract. Defendants contend that delivery and payment were to be concurrent acts, and that they could not be put in default without a demand for delivery, accompanied by tender of payment. Plaintiff, on the other hand, contends that the contract required the seller to deliver the apricots at his nearest shipping station (San Jose) f. o. b., procure a bill of lading, and that payment should be made on presentation of sight draft and bill of lading showing shipment of fruit. The complaint was framed upon this latter theory of the contract, which was adopted by the trial court, and findings and judgment followed in accordance therewith.

In this we think the trial court was correct. The words "August shipment, payment sight draft against papers" strongly suggest that the seller was to ship the fruit, and should be entitled to payment only on presentation of papers showing such shipment; in other words, upon presentation of shipping receipt or bill of lading.

But if there be any uncertainty in this regard, on the face of the contract, it was made clear by parol testimony that this was the meaning of such words according to the usage of the trade or business in which both parties were engaged. Evidence may be given of usage to explain the true character

of a contract or instrument, where such true character is not otherwise plain. In such case usage is an instrument of interpretation. (Code Civ. Proc., sec. 1870, subd. 12.)

Appellants also urge that plaintiff never supplied the lace paper, and that this was an act that he was required to do before defendants could pack or deliver the apricots. But it was clearly shown that the provision "Buyer to furnish lace paper with usual allowance for same," was a provision for his benefit. One of the defendants so testified. While defendants were still trying to obtain the apricots to fill the contract, and before they finally abandoned their efforts to carry out the contract, plaintiff notified them that they could use their own lace paper. He thus waived a provision of the contract intended for his benefit. A party to a contract may waive a provision intended for his benefit. (*Knarston* v. *Manhattan Life Ins. Co.,* 140 Cal. 57, [73 Pac. 740].) While there is some doubt from the evidence as to whether or not plaintiff supplied the labels before the end of August, it is certain that he supplied them before they were needed, and before defendants had procured any apricots to fill the order. The labels were sent to defendants, and received and retained by them to be used in marking the boxes of apricots. This was while they were representing that they would fill the order, and were trying to buy apricots for this purpose from the growers. Under these circumstances they cannot now be heard to say that plaintiff did not comply with the contract requiring him to furnish the labels free.

The court found the market price of the fruit agreed to be delivered to have been $912.58 more than the contract price. This finding is attacked as not supported by the evidence. The contention of appellant in this regard is predicated primarily on the claim that the complaint alleges a contract to deliver 1850 twelve and one-half pound boxes of apricots, which we know, as a matter of arithmetic, would amount to 23,125 pounds. If that be the amount of apricots called for by the contract pleaded, it is certain that the evidence in the record does not sustain the finding. But we think counsel is in error in his construction of the allegation of the complaint. The allegation of the complaint (and which is admitted by the answer) is that defendants agreed

to sell and deliver to plaintiff "1850 twelve and one-half pound kilo boxes Choice Apricots at," etc. This allegation is certainly ambiguous and uncertain in its meaning, for the words "pound" and "kilo" designate units of weight and belong to different systems. The word pound is the designation of a unit of weight in the system in most common use in this country, while the word "kilo" is an abbreviation, sanctioned by common use, of the word "kilogram," which is the designation of a unit of weight in a system not of such common use in this country, but still a system well known and understood. The words "pound," "kilogram," and its abbreviation "kilo" are defined in the Standard Dictionary of the English language. With this understanding of the signification of the words "pound" and "kilo," it is apparent that the quantity designated by "1850 twelve and one-half pound kilo boxes Choice Apricots" is uncertain. Either the word "pound" or the word "kilo" should be dropped from the expression.

The contract introduced in evidence without objection was perfectly definite and certain. It is contained in the letter of plaintiff to defendants and defendants' answer thereto, and calls for "1850-12½ kilo boxes of Choice Apricots at," etc. Each letter specifies "1850 12½ kilo boxes choice apricots," and the word "pound" is nowhere used in the letters making the contract. The court in its findings followed the language of the contract, and found that the defendants agreed to sell to plaintiff and to deliver to him "1850 12½ kilo boxes choice apricots at," etc. No point was made upon the uncertainty appearing upon the face of the complaint, either by demurrer or objection to evidence. If the attention of counsel or the court had thus been called to the matter, doubtless the complaint would have been amended so as to conform without ambiguity or uncertainty to the facts as they existed in the contract.

Doubtless the venerable and scholarly judge who tried this cause resolved the uncertainty in the complaint in the light of the definite and certain terms of the contract, and so construed the complaint as alleging a sale of 1850 twelve and one-half kilo boxes choice apricots. Under the circumstances disclosed by the record we think he was correct in so doing.

A kilo is the equivalent of 2.20462125 pounds, or practically two and one-fifth pounds. A twelve and one-half kilo box would thus contain 27½ pounds, and 1850 of such boxes would contain 50,875 pounds. Under this view of the quantity of apricots agreed to be delivered there can be no doubt that the evidence in the record amply sustains the finding attacked.

The court in its conclusions of law decided that plaintiff was entitled to interest on the amount found as damages, from the first day of September, 1905, to the entry of judgment, and judgment was entered accordingly for such interest.

This is contrary to the rule laid down in *Hewes* v. *Germain Fruit Co.*, 106 Cal. 442, [39 Pac. 853], in an action for damages for breach of contract to purchase raisins, where the judgment for damages, with interest thereon to the entry of the judgment, was modified by eliminating therefrom the amount allowed as interest.

The measure of damages, for breach of contract to purchase property is laid down in section 3311 of the Civil Code, and for breach of contract to sell such property in section 3308 thereof. Neither section in terms provides for any interest, and both are subject to section 3357, Civil Code, which provides that "The damages prescribed in this chapter are exclusive of exemplary damages and interest, except where those are expressly mentioned." "This chapter" referred to in the foregoing section begins with section 3300 and ends with section 3360, and thus includes section 3308.

The judgment is modified by striking therefrom the words "together with interest thereon at the rate of seven per cent per annum from the first day of September, 1905, until the entry of judgment, amounting to the sum of $1024.90," and as so modified the judgment and order are affirmed.

Cooper, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 10, 1908.