[No. B001079. Second Dist., Div. Seven. Apr. 13, 1984.]

E. LAD SABO, Plaintiff and Appellant, v.
VINCENT FASANO et al., Defendants and Respondents.

COUNSEL

Kim, Stearns, Lines & Moore and William M. Reichert for Defendant and Appellant.

Walleck, Shane, Pelletier & Stanard and Roger L. Stanard for Defendants and Respondents.

OPINION

JOHNSON, J.— ▉ In this action for specific performance between a buyer and seller of real estate, we hold where the offer to buy is conditioned on the sellers' acceptance within a specified time the buyer may waive the time limit and treat the seller's late acceptance as timely. The undisputed facts of this case show the buyer waived the sellers' late acceptance and that

the sellers knew their late acceptance had been waived. Therefore, the trial court erred in granting judgment to the sellers.

## FACTS AND PROCEEDINGS BELOW

The defendants, Mr. and Mrs. Fasano, listed their apartment building for sale in December 1976. The plaintiff, Mr. Sabo, executed an offer on December 23, 1976. The written offer in the form of a "Deposit Receipt" contained a provision common in real estate transactions that the offer would be deemed revoked if not accepted within a certain period (See Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) §§ 3.7, 3.40, 3.60). This particular offer provided that it "shall be deemed revoked unless accepted in writing within 5 days after the date hereof . . . ."

The broker handling this transaction did not present Sabo's offer to the Fasanos until the sixth day following its execution, December 29, 1976, one day after the expiration date stated in the offer. The Fasanos signed the deposit receipt on the day it was presented to them for acceptance. The following day the broker notified Sabo that the Fasanos had accepted his offer. Sabo knew the acceptance was late but made no objection.

After obtaining the Fasanos' signature on the deposit receipt, the broker had an escrow company open an escrow for Sabo's purchase of the Fasanos' property. The deposit receipt was placed in the escrow along with Sabo's deposit of $3,000. Sabo signed the first set of escrow instructions on January 11, 1977, and a second set of instructions on January 17, 1977. He also proceeded to arrange for financing and insuring the property.

The Fasanos admitted they signed the deposit receipt with the intent to be bound by it. They did not sign either set of escrow instructions. However, the uncontradicted evidence indicates the escrow instructions were prepared by the broker and the Fasanos not only knew that escrow instructions had been prepared but participated in their drafting. In addition, in early January 1977 Sabo told an attorney representing the Fasanos that he believed he and the Fasanos had a contract and told the Fasanos, in a letter dated March 14, 1977, he intended to go forward with the transaction. Finally, a letter dated March 22, 1977, to Sabo's attorney from the Fasanos' attorney states: "I represent Mr. and Mrs. Vincent Fasano, parties to an agreement of sale with Mr. E. Lad Sabo. I have a copy of his letter of 14 March 1977 . . . . [¶]The Fasanos will certainly comply with the contract of December 23 . . . ."

The trial court granted judgment to the Fasanos. It held the Fasanos' signature on the deposit receipt could not constitute an acceptance of Sabo's

offer because the offer had already expired. The Fasanos' late signatures on the deposit receipt constituted a counteroffer which was not accepted in writing by Sabo or, if the escrow instructions were an acceptance, that an acceptance was not communicated to the Fasanos. Alternatively, the court found that assuming Sabo waived the Fasanos' late acceptance, there was no communication of that waiver to the Fasanos and, therefore, no mutual assent to the purported agreement.

## DISCUSSION

■ It is well settled a contracting party may waive conditions placed in a contract solely for that party's benefit. (*Doryon* v. *Salant* (1977) 75 Cal.App.3d 706, 712 [142 Cal.Rptr. 378] and cases cited therein.) The provision in an offer specifying the means of acceptance is such a condition and may be waived by the offeror. (*Artukovich* v. *Pacific States etc. Pipe Co.* (1947) 78 Cal.App.2d 1, 3 [176 P.2d 962]; *Gallwey* v. *Galbreath* (1919) 45 Cal.App. 120, 122 [187 P.73]; cf. *Rice Lands Etc. Co.* v. *Blevins* (1923) 61 Cal.App. 536, 541 [215 P.402].) ■ We find no reason why this rule should not apply in the case of a time limit imposed by the offeror for acceptance by the offeree.

Civil Code section 1587 provides an offer is revoked "[b]y the lapse of the time prescribed in such proposal for its acceptance, or if no time is so prescribed, the lapse of a reasonable time without communication of the acceptance . . . ." In *Forbes* v. *Board of Missions* (1941) 17 Cal.2d 332, 339 [110 P.2d 3], our Supreme Court held the reasonable time condition implied by law could be waived by the offeror's failure to object to an unreasonable delay. The owners of real property, Mr. and Mrs. Zapata, offered to deed the property to their church subject to a life estate and the church's agreement to provide an education to a young relative. The offer was not accepted until almost seven months after it had been delivered to the church. The executed agreement was then delivered to Mrs. Zapata and the deed recorded. (Mr. Zapata had died in the interim.) Following Mrs. Zapata's death, her executor sued the church to set aside the deed and quiet title to the property. The trial court found the lapse of over six months between the offer by the Zapatas and the acceptance by the Board of Missions was unreasonable and that therefore the offer was "'revoked . . . by the lapse of a reasonable time without communication of acceptance or acceptance of said offer or proposal by defendant church.'" (*Ibid.*) Nevertheless, the Supreme Court reversed the judgment for the executor holding that while the issue of what constituted a reasonable time between the offer and acceptance was a question of fact, Mrs. Zapata ". . . made no objection to the delay, received the agreement and gave . . . her written receipt for the same. She thereby waived the right to complain of said delay." (*Ibid.*)

Later, in *Davies* v. *Langin* (1962) 203 Cal.App.2d 579 [21 Cal.Rptr. 682], the waiver theory was used to enforce a contract on behalf of another late-accepting offeree against the offeror. The offeror, Langin, offered to sell his real property to the offeree, Davies. The offer was expressly left open for two days. The offeree signed his acceptance the next day, but the acceptance was not communicated to the offeror until five or six days after the offer, at which time the offeror indicated that he was pleased the deal had been closed. (*Id.,* at pp. 581-582.) "The facts . . . clearly show that appellant made no attempt to rely upon the two-day requirement provided in his offer, but, on the contrary, indicated that an acceptance made at a later date was entirely agreeable to him. Under these circumstances, it cannot be said that the trial court erred in finding that appellant waived compliance with the two-day acceptance requirement of the offer." (*Id.,* at p. 584.) The court went on to say the expiration or revocation of an offer creates "a right on the part of the offeror to refuse to recognize a belated acceptance. In *Forbes* v. *Board of Missions* [*supra*] the court held this right was waived by an offeror who chose to ignore the delay and treat the acceptance as timely. The same reasoning would appear equally applicable to the case at bar." (*Id.,* at p. 585.)[1]

Other jurisdictions are in accord with the view expressed in *Forbes* and *Davies,* that one who makes an offer and fixes a time for its acceptance may waive the time and bind the late-accepting party. (See, e. g., *Kansas City* v. *Industrial Gas Co.* (1934) 138 Kan. 755 [28 P.2d 968, 970]; *W. B. Leedy & Company* v. *Shirley* (1958) 97 Ga.App. 801 [104 S.E.2d 580, 585]; *Nichols* v. *Nicholas* (1958) 217 Md. 79 [141 A.2d 746, 748]; *Beirne* v. *Alaska State Housing Authority* (Alaska 1969) 454 P.2d 262, 264-265; *Maclay* v. *Harvey* (1878) 90 Ill. 525, 530.)

We recognize there is an alternative view, held by respected legal scholars and courts of other jurisdictions, that "[u]nless the offeree exercises his power of acceptance before [the offer] expires, there is no contract, for there is no power to accept. Therefore, where the offer has terminated by lapse of time, an attempt to accept is ineffectual to create a contract. . . . Once terminated . . . the original offer can never be revived." (*Kurio* v. *United States* (S.D.Tex. 1970) 429 F.Supp. 42, 64, 65; see also *Houston Dairy* v. *John Hancock Mut. Life Ins. Co.* (5th Cir. 1981) 643 F.2d 1185, 1186; 22 *West Main Street, Inc.* v. *Boquszewski* (1970) 34 App.Div.2d 358 [311 N.Y.S.2d 565, 567-568]; *Frandsen* v. *Gerstner* (1971) 26 Utah 2d 180 [487 P.2d 697, 700]; *Wax* v. *Northwest Seed Co.* (1937) 189 Wash. 212 [64 P.2d 513, 515]; *Morrison* v. *Rayen Investments, Inc.* (1981) 97 Nev.

---

[1]The foregoing is, technically, dictum because, while it clearly recognized that an offeror could waive timeliness of acceptance, the court also noted that the key issue was not whether the offer had been timely accepted but whether the acceptance had been timely communicated. (*Id.,* at p. 585.)

58 [624 P.2d 11, 12].) This view is based on the theory that "[u]ntil the end of [the time limit on the offer] the offer is regarded as being constantly repeated. After that there is no offer, and, properly considered, nothing to withdraw." (1 Williston on Contracts (3rd ed. 1957) § .93, p. 337; see also 1 Corbin on Contracts (1963) § 74, p. 313; Rest.2d Contracts, § 70, pp. 169-170; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 149, p. 144.) Those who hold this view treat the late acceptance as a counter-offer which must be accepted by the original offeror to create a contract. (*Ibid.*)

Other courts have expressed the view, with which we tend to agree, that regardless of the legal analytical vehicle, i.e., counteroffer and acceptance or waiver of the time limitation for acceptance, the end result is the same. (See *Cain* v. *Noel* (1977) 268 S.C. 583 [235 S.E.2d 292, 293]; *Beirne* v. *Alaska State Housing Authority, supra,* 454 P.2d at pp. 264-265.)

Both the "counteroffer" and "waiver" theories can be rationally defended. For the reasons set forth below, we have elected to follow the waiver theory.

One drawback to the "counteroffer" theory is that "counteroffer" does not accurately describe what has transpired between the parties. ■ "A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer." (Rest., Contracts (2nd ed. 1981) § 39 (1), p. 106 and see *Bullock* v. *McKeon* (1930) 104 Cal.App. 72, 79 [285 P. 392].) In the case of a late acceptance, there is no substitution of the terms originally offered. By definition it is a full and complete acceptance of the offer; it just happens to be late. As Justice Holmes points out, "When an offer of a certain bilateral contract has been made, the same contract cannot be offered by the other side. The so-called offer would neither be revocable nor unaccepted. It would complete the contract as soon as made." (Holmes, The Common Law (1881) at p. 306.)

The Fasanos vigorously argue the counteroffer theory is necessary to protect sellers. The waiver theory, they contend, would leave the seller uncertain as to whether there is a contract because the buyer need not waive an untimely acceptance. (See Witkin, *supra.*) The simple answer to this argument is that the seller, who created his own dilemma by accepting late, can resolve any uncertainty by making an inquiry of the buyer. It must be assumed the seller intends to bind herself by the act of acceptance, even if the act is untimely. Indeed, in the case at bar, the Fasanos admitted that by signing the deposit receipt they intended to be bound by its terms. The buyer may or may not waive the time for acceptance but generally this decision

will be expressed by his actions after receiving the late acceptance. (Again, that is what occurred in the case at bar.) If the seller is in doubt whether the buyer has waived the time limit, the seller should make inquiry. As a matter of fundamental fairness the party who caused the uncertainty by late acceptance of the offer should bear the burden of clarifying matters if clarification is necessary. An analogy exists in the long-standing rule that "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.)

Moreover, the counteroffer theory might not provide protection to sellers superior to the protection afforded by the waiver theory. Under the waiver theory, until there is a waiver neither party can enforce the terms of the deposit receipt. Once there is a waiver either party may do so. In the case of a counteroffer, the statute of frauds may operate in some circumstances to bind the seller but not the buyer. (See Civ. Code, § 1624, subdivision 4.) The seller's signature on the deposit receipt constituting the counteroffer would satisfy the statute of frauds in a suit by the buyer against the seller but would the buyer's signature on the original offer satisfy the statute of frauds in a suit by the seller against the buyer? The answer to this question is beyond the scope of this opinion. We pose the question merely to make the point that the waiver theory may provide more certainty in real estate transactions than the counteroffer theory.

■ In the case at bar, the trial court assumed Sabo waived late acceptance but found that "there was no communication of any waiver to defendants." The court then concluded: "Without communication of such waiver, the offeree has no knowledge as to whether or not there is a binding agreement, and the purported agreement is lacking mutual assent."

It would be a rare case in which the offeror's waiver was not communicated to the offeree. This is not such a case and the trial court's finding to the contrary is not supported by the evidence.[2] Here, the evidence demonstrates an unequivocal desire of the buyer to go ahead with the purchase of the property. This desire was communicated to the sellers through the buyer's words and deeds.

Within three days after the Fasanos accepted his offer, Sabo went to the escrow office "to get the paper work moving." He signed escrow instructions on January 12 and a second set of instructions on January 17. He deposited $3,000 into escrow and arranged for the transfer of an additional $24,000 into escrow. In addition, he arranged for a loan and insurance on

---

[2]Because the issue is not presented in this case, we do not decide if a waiver must be communicated to the other contracting party to be effective.

the property. He also advised the Fasanos' attorney and the Fasanos themselves of his intention to go forward with the deal. These are not the acts of one who has revoked his offer to buy property.

The Fasanos claim they did not know whether or not they had a binding agreement is not credible. In early January their attorney contacted Sabo and asked if he would release the Fasanos from the agreement; Sabo declined. Shortly thereafter the Fasanos were presented with escrow instructions regarding Sabo's purchase of the property. In March they received a letter from Sabo expressing his view that the deposit receipt was a binding agreement. And, later in March, the Fasanos' attorney wrote to Sabo's attorney acknowledging that the Fasanos are "parties to an agreement of sale with Mr. E. Lad Sabo" and pledging that "[t]he Fasanos will certainly comply *with the contract of December 23* . . . ." (Italics added.)

### DISPOSITION

The judgment is reversed.

Thompson, Acting P. J., and Lew, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 21, 1984. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.