**WYLER SUMMIT PARTNERSHIP, a partnership, Plaintiff–Appellant,**

v.

**TURNER BROADCASTING SYSTEM, INC., a Georgia corporation, and Turner Entertainment Co., a Georgia corporation, Defendants–Appellees.**

No. 96–16329.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 1997.

Decided Jan. 30, 1998.

Jonathan R. Bass, Charles R. Breyer, Coblentz, Cahen, McCabe & Breyer, San Francisco, California, for plaintiff-appellant.

Joel Linzner, Margaret C. McHugh, Townsend and Townsend and Crew, San Francisco, California, for defendants-appellees.

Before: FARRIS and TASHIMA, Circuit Judges, and STAGG, Senior District Judge [*]

Opinion by Judge STAGG; Dissent by Judge TASHIMA.

STAGG, Senior District Judge:

This case concerns a contract dispute between the Wyler Summit Partnership ("Wyler Summit") and Turner Broadcasting System, Inc., and Turner Entertainment Co. (hereinafter collectively referred to as "Turner"). At issue is the effect of certain provisions of a 1958 contract between film director William Wyler ("Wyler") and MGM–Loew's, Inc. ("MGM") for the direction of the film classic *Ben Hur*. Wyler Summit, Wyler's successor in interest to the *Ben Hur* contract, brought suit against Turner, MGM's successor in interest, to recover compensation allegedly due thereunder. The district court granted Turner's motion to dismiss for failure to state a claim upon which relief can be granted. We affirm the district court's opinion in part, reverse in part, and remand for further proceedings in accordance herewith.

## I. BACKGROUND

In 1958, Wyler entered into a written contract with MGM to direct the motion picture *Ben Hur*. In exchange for his services, MGM agreed to pay Wyler $350,000 *plus* a "percentage compensation" in the amount of three percent of the film's gross receipts in excess of $20 million (the "percentage compensation provision"). The contract further provided that this "percentage compensation" shall be payable "in annual installments not to exceed the sum of $50,000 in any one year" (the "installment payment provision").[1]

---

[*] The Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

1. Paragraph 3 of the contract, entitled "Compensation," provides in pertinent part:
   [W]e agree to pay you as compensation in full thereof and for all rights herein granted and agree to be granted to us as follows:
   (a) The sum of Three Hundred and Fifty Thousand Dollars ($350,000)....
   ....
   (b) We shall further pay to you ...:

....
   (ii) An amount equal to three per cent (3%) of the gross receipts derived from the distribution and exhibition of said photoplay, in excess of Twenty Million Dollars ($20,000,-000) of such gross receipts....
The compensation provided for in this subdivision (b) shall be referred to herein as your "percentage compensation" and shall be payable in annual installments not to exceed the sum of Fifty Thousand Dollars ($50,000) in any one year....

Because of its extraordinary success,[2] *Ben Hur* has—according to the latest figures available to the court—generated in excess of $3.3 million in total "percentage compensation" for Wyler and his heirs.[3] Of this sum, Wyler and his heirs have already been paid $1.8 million (in $50,000 annual payments). As a result of the installment payment provision, Turner retains another $1.5 million in deferred "percentage compensation" payable to Wyler's heirs.[4]

Wyler's heirs have conveyed their interest in the *Ben Hur* contract to Wyler Summit, a California partnership composed solely of Wyler's heirs. It is undisputed that Wyler Summit is owed the deferred "percentage compensation" presently held by Turner (and any other deferred "percentage compensation" that might accrue in the future). However, Wyler Summit and Turner disagree as to *when* this debt is actually payable.

With the objective of having the installment payment provision judicially annulled and compelling Turner to remit the unpaid "percentage compensation," Wyler Summit filed suit against Turner in the Northern District of California on September 28, 1995. Wyler Summit sought (1) a reformation of the *Ben Hur* contract deleting the installment payment provision; (2) declaratory re-

lief determining the parties' respective rights and obligations thereunder; and (3) a book accounting. In addition, Wyler Summit stated California state-law claims against Turner for breach of contract, unjust enrichment, breach of fiduciary duty, and breach of the implied duty of good faith and fair dealing.

In its complaint, Wyler Summit alleged that it is, in effect, being deprived of the lion's share of the economic benefit of Wyler's promised "percentage compensation" by the operation of the contract's installment payment provision. Specifically, Wyler Summit alleged that Turner is earning, and will continue to earn, a significant amount of interest income on the approximately $1.5 million in deferred "percentage compensation" held by it; that the original parties to the contract never contemplated that the $50,000 annual installment payment provision—which was inserted solely at Wyler's request to avoid income tax liability under the Internal Revenue Code of 1954 [5]—would work to deprive Wyler or his heirs of this benefit; and that Turner has rejected the partnership's proposal to waive said provision. As a result thereof, Wyler Summit argued that Turner is enjoying an unbargained-for windfall at Wyler Summit's expense.[6] Accordingly, Wyler Summit prayed for a judgment, annulling the installment

.  .  .  .

The *Ben Hur* contract included other, alternative compensation provisions. However, these provisions never became operable and, therefore, will not be considered herein.

2.  *Ben Hur* garnered more Academy Awards than any other film in history, including Oscars for best picture (Sam Zimbalist, producer); actor (Charlton Heston); supporting actor (Hugh Griffith); director (Wyler); cinematography, color (Robert Surtees); art direction-set direction, color (William A. Horning, Edward C. Carfagno, and Hugh Hunt); costume design, color (Elizabeth Haffenden); sound (Franklin E. Milton); film editing (Ralph E. Winters and John D. Dunning); special effects (A. Arnold Gillespie, Robert MacDonald, and Milo Lory); and music, scoring of a dramatic or comedy picture (Miklos Rozsa). *See Academy Awards for 1959* (visited Sept. 6, 1997) <http://us.imdb.com/Oscars/oscars_1959.html>. As of January 31, 1995, *Ben Hur* had earned gross receipts in excess of $131 million. *See* Excerpts of Record at 54.

3.  Wyler died in 1981 at which time his children—Catherine Wyler, Melanie Wyler, Judith Wyler Sheldon, and David Wyler (hereinafter

collectively referred to as "Wyler's heirs")—became his successors in interest to the *Ben Hur* contract.

4.  As a matter of illustration, in the reporting period ending January 31, 1995, *Ben Hur* grossed $2,298,897. Wyler's heirs' three percent share of this amount was $68,967. Pursuant to the terms of the contract, Wyler's heirs were paid $50,000 by Turner, and $18,967 was deferred, thereby increasing the total amount of deferred "percentage compensation" held by Turner to $1,532,127. *See* Excerpts of Record at 54.

5.  From 1954 to 1964, individuals paid an 89 percent marginal tax rate on taxable income over $100,000. For taxable income over $150,000, the marginal tax rate increased to 90 percent, and for income over $200,000, the marginal rate was 91 percent. *See* I.R.C. § 1(a) (1954). These high rates were only slightly reduced for married couples filing jointly. *See* I.R.C. § 2(a)(1954).

6.  Assuming the $1,532,127 in deferred "percentage income" held by Turner was invested in 30–year United States Treasury Bonds (which for all intents and purposes represent a zero-risk investment) and those bonds yielded 6.351 percent (the yield as listed in the *Wall Street Journal's* Market

payment provision and ordering Turner to pay the partnership the accumulated "percentage compensation" in a lump sum. Only then, Wyler Summit argued, can an equitable result be realized.

On November 21, 1995, Turner filed a motion to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting, in the alternative, that Wyler Summit had failed to state a claim upon which relief can be granted; that all of the claims asserted by the partnership were time-barred; and that the equitable doctrine of laches barred the claims for reformation, unjust enrichment, and breach of fiduciary duty. Relying on the clear import of the contractual language in question, Turner contended in the memorandum supporting its motion that a *maximum* of $50,000 in "percentage compensation" is payable to Wyler Summit annually and that the deferred "percentage compensation" held by it will only be applied towards this sum in those years in which the "percentage compensation" due Wyler Summit does not exceed $50,000. Turner further contended that there is no certainty that *Ben Hur* will continue to generate "percentage compensation" for Wyler Summit in excess of $50,000 per year and that *at some point in the future*, the pool of deferred "percentage compensation" now held by it will be exhausted through annual payments to the partnership. Turner admitted that, in the meantime, it will earn and retain interest income on the deferred "percentage compensation" held by it, but insisted that this was the clear intent of the contract between Wyler and MGM.

After a thorough hearing on the matter, the district judge granted Turner's motion on June 19, 1996, dismissing all of Wyler Summit's claims. Wyler Summit appeals.

## II. LAW AND ANALYSIS

■ We review *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted. See *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995); *Peloza v. Capistrano Unified School District*, 37 F.3d 517, 520 (9th Cir. 1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995). On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Under Rule 12(b)(6), a complaint "should not be dismissed unless it appears beyond doubt that [the] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hydranautics v. Filmtec Corp.*, 70 F.3d 533, 535–36 (9th Cir.1995).

■ We affirm the district court's opinion except as follows. On appeal, Wyler Summit contends, *inter alia*, that the district court erred by dismissing its breach of contract claim against Turner. In its complaint, Wyler Summit alleged in pertinent part:

7. At the request and for the benefit of William Wyler, Loew's Incorporated agreed to pay the percentage compensation in annual installments not to exceed the sum of fifty thousand dollars (the "installment payment provision"). It is not the intent of the parties in including the installment payment provision in the contract to provide an economic benefit to Loew's Incorporated or to deprive William Wyler of the economic benefit of the percentage compensation.

. . . .

11. Prior to the filing of this complaint, plaintiff communicated to Turner its willingness to waive the installment payment provision, which, as alleged above, had been included in the contract purely as a benefit to William Wyler. Turner rejected plaintiff's proposal that the installment payment provision be deleted from the contract and has refused to pay

Diary for October 14, 1997, *see Wall Street Journal*, Oct. 14, 1997, at C1) Turner would realize an annual income of $97,305.38—enough not only to satisfy its annual $50,000 obligation to Wyler Summit, but also to add to its invested "principal." The probability that, over the long-run, market conditions would create a situation in which Turner would be forced to draw on, if not exhaust, this invested "principal" in order to meet its obligation to Wyler Summit is so unlikely as to be inconsequential.

plaintiff the percentage compensation to which they are [sic] entitled, except as limited by the installment payment provision. . . .

. . . .

19. Turner's failure and refusal to pay to plaintiff the accumulated percentage compensation constitutes a breach of contract. . . .

Excerpts of Record 3, 4, and 6.[7] The district court, however, dismissed this claim, concluding that Wyler Summit could not waive the installment payment provision because (1) the *Ben Hur* contract did not contain a clause authorizing such a waiver and (2) the provision at issue benefits Turner as well as Wyler Summit. We find that the district court incorrectly applied California contract law and the standards governing Rule 12(b)(6) motions with respect to this claim.

■ It is a well-established principle of California law that "a contracting party may waive conditions placed in a contract solely for the party's benefit." *Sabo v. Fasano,* 154 Cal.App.3d 502, 505, 201 Cal.Rptr. 270, 271 (Cal.App.2d Dist.1984). In fact, this maxim of contract law has appeared in California jurisprudence for more than nine decades since its first recognition by the California Supreme Court in *Knarston v. Manhattan Life Ins. Co.,* 140 Cal. 57, 63, 73 P. 740, 741 (Cal.1903). *See, e.g., WYDA Associates v. Merner,* 42 Cal.App.4th 1702, 1714, 50 Cal. Rptr.2d 323, 330 (1st Dist.1996); *Reeder v. Longo,* 131 Cal.App.3d 291, 296, 182 Cal. Rptr. 287, 290 (2d Dist.1982); *Doryon v. Salant,* 75 Cal.App.3d 706, 712, 142 Cal.Rptr. 378, 381 (2d Dist.1977); *Crescenta Valley Moose Lodge No. 808 v. Bunt,* 8 Cal.App.3d 682, 87 Cal.Rptr. 428 (2d Dist.1970); *Wesley*

*N. Taylor Co. v. Russell,* 194 Cal.App.2d 816, 828, 15 Cal.Rptr. 357, 365 (2d Dist.1961); *O'Connell v. Zimmerman,* 157 Cal.App.2d 330, 336, 321 P.2d 161, 165 (3d Dist.1958); *Isaacson v. G.D. Robertson & Co.,* 85 Cal. App.2d 71, 75, 192 P.2d 486, 488 (2d Dist. 1948); *Ellsworth v. Knowles,* 8 Cal.App. 630, 632, 97 P. 690, 691 (1st Dist.1908).[8] In *Knarston,* the California Supreme Court explained:

> **It is a well settled maxim that a party may waive the benefit of any condition or provision made in his behalf, no matter to what manner it may have been made or secured.** Broom's Legal Max. 547. **It extends to all provisions, even constitutional and statutory, as well as conventional.** The law will not compel a man to insist upon any benefit or advantage secured to him individually.

*Id.* (quotations and citations omitted)(emphasis added). Although most of the previously cited cases concern minor or procedural conditions precedent to performance, we see no impediment to the application of this principle in the case *sub judice, i.e.,* in the context of an executory contract.[9]

The district court acknowledged the existence of the waiver doctrine in its June 18, 1996 ruling. *See* Excerpts of Record at 107 ("A party may waive a contractual provision inserted solely for its own benefit"). However, relying on *Eichman v. Fotomat Corp.,* 880 F.2d 149, 165 (9th Cir.1989), it mistakenly conditioned the efficacy of such a waiver on the existence of "some *other* provision in the contract which allows the party to waive its obligations" thereunder. Excerpts of Record at 107 (emphasis in original). Because Wyler Summit had not alleged the existence of such a provision in the *Ben Hur*

7. The dissent submits that the majority "overlook[ed]" the fact that Wyler Summit "does not even allege [in its complaint] that the installment payment provision was included solely for Wyler's benefit." We feel no need to address this point other than to reiterate that the complaint states clearly and unambiguously that **"the installment payment provision ... had been included in the contract purely as a benefit to William Wyler."** Excerpts of Record at 4 (emphasis added); *See also* Excerpts of Record at 3 and 6.

8. In addition, we note that there is clear precedent in this circuit for the application of the waiver doctrine. *See Fairbanks Morse & Co. v. Nelson,* 217 F. 218, 221 (9th Cir.1914).

9. Accepting Wyler's contentions as true, as we must on a motion to dismiss, the provision in question was included in the contract to effect tax savings on Wyler's behalf. When viewed in this light, the provision in question would be of subordinate importance to the contract's fundamental, fee-for-services cause and, therefore, subject to waiver under the authorities set forth above and in the dissent.

contract, the district court dismissed its waiver claim for failure to state a claim upon which relief can be granted. Neither *Eichman* nor any other case applying California law, however, establishes such a limitation on the waiver doctrine.

■ Alternatively, the district court found that dismissal of Wyler Summit's waiver claim was warranted because

> [t]here is nothing in the contract to suggest that the percentage compensation provision was included *solely* for the benefit of Wyler. In fact, the opposite is true: the provision also benefits defendants by allowing them to *limit* Wyler's annual payment. The clear benefit to defendants is underscored by plaintiff's allegations that defendants have profited and continue to profit from their retention of the deferred compensation.

Excerpts of Record at 116 (emphasis in original). In so finding, the district court committed two distinct errors. First, despite the standards applicable under Rule 12(b)(6) motions, it resolved a factual issue-whether the installment payment provision was included in the contract solely for Wyler's benefit-in favor of the movant, Turner. See *Crescenta Valley Moose Lodge No. 808 v. Bunt*, 8 Cal. App.3d 682, 687, 87 Cal.Rptr. 428, 431 (2d Dist.1970)("Whether a condition is solely for the benefit of [a particular contracting party] is for the trial court to determine as a fact from all the evidence"); *Wesley N. Taylor Co. v. Russell*, 194 Cal.App.2d 816, 828, 15 Cal.Rptr. 357, 365 (2d Dist.1961)(finding that the disputed contractual provisions "were imposed by the plaintiff, and were for the sole benefit of the plaintiff, and the finding is supported by the evidence").[10] As established above, on a motion to dismiss, the court is not authorized to make such a factual determination. Rather, the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff. *See Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994).

■ Second, the court conducted the wrong inquiry. Although potentially probative of the parties' intent, the fact that the installment payment provision *presently* benefits, or has benefited, MGM and/or Turner is not, *ipso facto*, determinative of the relevant inquiry in this case-whether said provision was *originally* (*i.e.*, in 1958) included in the contract solely for Wyler's benefit. *See, e.g., Sabo v. Fasano*, 154 Cal.App.3d 502, 505, 201 Cal.Rptr. 270, 271 (2d Dist.1984) ("It is well-settled a contracting party may waive conditions **placed in** a contract solely for that party's benefit") (emphasis added); *Doryon v. Salant*, 75 Cal.App.3d 706, 712, 142 Cal.Rptr. 378, 381 (2d Dist.1977) ("[A] contracting party may waive provisions **placed in** a contract solely for his benefit") (emphasis added); *Wesley N. Taylor Co. v. Russell*, 194 Cal.App.2d 816, 828, 15 Cal.Rptr. 357, 365 (2d Dist.1961) ("It is, of course, well settled that a contracting party may waive provisions **placed in** a contract solely for his benefit") (emphasis added); *Fairbanks, Morse & Co. v. Nelson*, 217 F. 218, 221 (9th

---

**10.** Despite language in *Crescenta Valley Moose Lodge* and *Russell* to the contrary, one California appellate court has stated that the issue of whether a contractual provision was inserted into a contract solely for the benefit of one of the parties is a matter of contract interpretation and, therefore, a question of law. *See WYDA Associates v. Merner*, 42 Cal.App.4th 1702, 1715, 50 Cal.Rptr.2d 323, 330 (3d Dist.1996). We expressly reject this conclusion. The parties in the instant case do not dispute the meaning of the contractual language in question. Thus, this court is not called upon to engage in contractual interpretation *per se*. What is in dispute, however, is how and why the installment payment provision was included in the *Ben Hur* contract-an inquiry that calls for extrinsic evidence.

In the absence of controlling California Supreme Court precedent, we are *Erie*-bound to apply the law as we believe that court would do so under the circumstances. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967)("If there is no decision by [the state supreme] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State"). The weight of authority and the circumstances present herein compel us to conclude that this issue is, at best, a mixed question of law and fact. In other words, we are not, under the instant circumstances, prepared to make the broad assumptions necessary to find for either party on this issue as a matter of law.

Cir.1914) ("[T]he party for whose benefit the provision is **made**, and who has the right to exact its performance, may waive the same") (emphasis added); *Ellsworth v. Knowles*, 8 Cal.App. 630, 632, 97 P. 690, 691 (1st Dist. 1908) ("A party to a contract may waive a provision **intended** for his benefit") (emphasis added); *Knarston v. Manhattan Life Ins. Co.*, 140 Cal. 57, 63, 73 P. 740, 741 (Cal.1903) ("[P]rovisions in a contract may be waived by the party for whose benefit they are **inserted**") (emphasis added). In paragraph 11 of its complaint, Wyler Summit alleged that the installment payment provision was "**included in the contract purely as a benefit to William Wyler.**" Excerpts of Record at 6 (emphasis added). On Turner's motion to dismiss, the district court was obligated to accept this well-pleaded allegation as true, not to look beyond the complaint and make a factual determination based on incomplete evidence.

We hold that when considered in a light most favorable to the nonmovant, Wyler Summit's complaint stated a cause of action for breach of contract on the basis of its alleged waiver of the installment payment provision and Turner's subsequent failure to perform.[11] Accordingly, we reverse the district court's opinion to this extent only and remand for trial on the issue of whether the installment payment provision is waivable, *i.e.*, whether it was "inserted in" the contract solely for Wyler's benefit. Under California law, the applicable statute of limitations for such a claim is four years. *See* Cal.Code Civ. Proc. § 337. Furthermore, a cause of action accrues when the plaintiff discovers, or could have discovered through reasonable diligence, the injury and its cause. *See Angeles Chemical Co. v. Spencer & Jones*, 44 Cal. App.4th 112, 120, 51 Cal.Rptr.2d 594 (2d Dist.1996); *Hal Roach Studios v. Richard*

*Feiner & Co.*, 896 F.2d 1542, 1549 (1990). The record does not indicate when Wyler Summit allegedly waived the installment payment provision. However, for the purposes of remand, we find that the four-year limitations period began to run on the day that Turner received notice of the alleged waiver.

**AFFIRMED IN PART, REVERSED IN PART,** and **REMANDED** for proceedings in accordance herewith.

TASHIMA, Circuit Judge, dissenting:

I respectfully dissent.

I do not agree that Wyler Summit has stated a claim for breach of contract based on a waiver theory. Notwithstanding the parties' clear expression of their contractual intent, the majority allows Wyler Summit unilaterally to rewrite a material term of an unambiguous agreement nearly 40 years after its formation by misapplying the California law on waiver.

Preliminarily, I take issue with the majority's conclusion that "the district court committed two distinct errors," first, in misapplying the applicable standard under Rule 12(b)(6) and, second, in "conduct[ing] the wrong inquiry," on the "for-whose-benefit" issue. The district court, in fact, did not commit error in either respect and its judgment should be affirmed.

The district court concluded that "[t]here is *nothing in the contract* to suggest that the percentage compensation provision was included *solely* for the benefit of Wyler. In fact, the opposite is true: the provision also benefits defendants by allowing them to *limit* Wyler's annual payment." (Initial emphasis added, remaining emphases in the original.)

The interpretation of a contract is a question of law. *HS Servs., Inc. v. Nationwide*

---

**11.** By so holding, we are neither "allow[ing]" Wyler Summit to unilaterally rewrite" the *Ben Hur* contract, nor suggesting that it may be re-written on remand. Rather, we are merely acknowledging a contracting party's right under long-standing California jurisprudence to waive a provision inserted in a contract solely for his benefit.

In response to the dissent's broad assertion that this decision "will have a corrosive effect on the stability of contractual relations," we note

that on a Rule 12(b)(6) motion, a district court need only accept as true a plaintiff's "well-pleaded" factual allegations. Accordingly, unfounded attempts at re-drafting contracts can and should be dismissed at an early stage, and parties attempting to abuse the judicial process may be sanctioned at the district court's discretion. At the same time, litigants, like Wyler Summit, who set forth plausible waiver arguments, must be allowed to pursue their rights under California law.

*Mut. Ins. Co.,* 109 F.3d 642, 644 (9th Cir. 1997). Under the objective theory of contracts, whether a provision is intended *solely* to benefit one side should be determined from an objective review of the contract as a whole; not from extrinsic evidence offered 40 years later. As the majority recognizes, on a 12(b)(6) motion, only the *well pleaded* facts of a complaint should be accepted as true. "We do not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981). Moreover, in this case, the *Ben Hur* contract was attached to the complaint and incorporated *in haec verba.* Thus, neither we nor the district court are required to accept as true conclusory allegations in the complaint which are contradicted by the clear import of the contract itself. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).[1]

For a contractual provision to be waivable, as the cases cited by the majority recognize, the provision must have been included in the contract *solely* for that party's benefit. *E.g. Sabo v. Fasano,* 154 Cal.App.3d 502, 505, 201 Cal.Rptr. 270, 271 (1984). Wyler Summit does not even allege that the installment payment provision was included solely for Wyler's benefit, a pleading deficiency which the majority overlooks. Even assuming, however, that paragraph 7 of the complaint could fairly be read as alleging that the installment payment provision was included in the *Ben Hur* contract solely to benefit Wyler, that allegation is not entitled to be accepted as true because, as the district

court recognized, it is contradicted by a plain reading of the contract.

It is evident from the face of the installment payment provision and as a matter of plain common sense that, from the contract's inception, the provision benefitted MGM just as much, if not more so, than it benefitted Wyler. The forbearance of the payment of any debt, without interest, primarily benefits the debtor. If any party receives only an "incidental" benefit from such an arrangement, it is the creditor, whose only benefit is a tax benefit.[2]

This is not a factual issue. This is a contract interpretation issue. As a matter of law, the district court's interpretation of the contract was the only sensible conclusion to reach. The issue was properly reached and correctly disposed of on a 12(b)(6) motion to dismiss, where the contract was appended to and incorporated in the complaint.

On the primary legal issue of waiver, the majority relies on a line of cases beginning with *Knarston v. Manhattan Life Ins. Co.,* 140 Cal. 57, 73 P. 740 (1903). This reliance is greatly misplaced. The majority acknowledges that these cases involve waiver of only minor or procedural conditions precedent to performance. Yet, it goes on blithely to announce, without analysis or citation to any authority, that there is "no impediment" to waiver of the installment payment provision in the case at bench. In fact, there are several impediments, each one of which takes this case beyond the bounds of established waiver doctrine.

First, the majority conveniently overlooks the black letter rule that waiver may not

---

**1.** On this issue, the majority relies on both state and federal precedent. Assuming its reliance on state cases on how a contract should be construed on a 12(b)(6) motion is correct, as the majority notes, those cases are in conflict. *See Maj. op.* at 663 & n. 8. Unlike the majority, I believe that the better rule is stated in *WYDA Assoc. v. Merner,* 42 Cal.App.4th 1702, 50 Cal. Rptr.2d 323 (1996). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible...." *Id.* at 1709, 50 Cal.Rptr.2d 323 (quoting Cal. Civ.Code. § 1639). "The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted...." *Id.* at 1710, 50 Cal.Rptr.2d 323.

**2.** If, as the majority hypothesizes (probably correctly), Wyler's motive in agreeing to or insisting on the installment payment provision was to avoid or defer the payment of confiscatory income taxes, then he surely had no subjective intent that the provision could be waived by him. Otherwise, he would have run afoul of the constructive receipt of income doctrine, making all of his percentage compensation immediately taxable to him upon its receipt by MGM. *See generally* 2 *Mertens Law of Federal Income Taxation* §§ 10:01–10:03 (discussing the history and substance of the constructive receipt doctrine).

operate materially to alter the parties' agreed upon exchange. *Restatement of Contracts (Second)* § 84(1), & cmts. c, d. (1979) ("*Restatement*"); John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11–31, at 493 (3rd ed. 1987) ("The most important rule is that waiver of a material part of the agreed exchange is ineffective."); John E. Murray, Jr., *Murray on Contracts* § 111, at 629–30 (3rd ed.1990).

As the district court understood, fundamental changes in the parties' contractual duties may not be accomplished unilaterally through waiver, but instead require a modification of the contract by mutual consent or through estoppel. *See e.g., Howard v. County of Amador*, 220 Cal.App.3d 962, 977, 269 Cal.Rptr. 807, 817 (1990) ("The parties to an existing contract may, through mutual consent, modify or rescind their agreement.") (citing Cal.Civ.Code §§ 1689(a), 1697, 1698). The installment payment provision cuts to the core of the consideration on which the contact rests; it, therefore, should be held to be not subject to unilateral waiver. According to the *Restatement,* "where a promise to disregard the non-occurrence of the condition materially affects the value received by the promisor or the burden or risk assumed by him, the promise is not binding. . . ." *Restatement* § 84, cmt. c. Here, the admitted purpose and undeniable effect of Wyler Summit's waiver is to change the monetary value of the performance it will receive from Turner.

Further, even if Turner's failure to comply with the installment payment provision would not by itself have constituted a material breach, the provision is clearly more crucial to the contractual agreement than the provisions waived in the cases on which the majority relies. *See, e.g., Sabo v. Fasano*, 154 Cal.App.3d 502, 201 Cal.Rptr. 270 (five-day time limit on offer); *Reeder v. Longo*, 131 Cal.App.3d 291, 296–97, 182 Cal.Rptr. 287, 290–91 (1982) (illegal subordination clause in real estate contract).

In this respect, the present case is not analogous to *Knarston,* where an insurance company waived the requirement that the insured pay its premiums by a specific date, 140 Cal. at 62–63, 73 P. at 741, but to *Conner*

*v. Union Auto. Ins. Co.,* 122 Cal.App. 105, 9 P.2d 863 (1932). There, the court held that the insurance company could not waive an express exemption from its duty to insure even though the provision was clearly inserted in the contract solely for the insurance company's benefit. *Id.* at 110, 9 P.2d 863 ("By means of the doctrine of waiver a contract may not be reformed so as to create a liability for conditions which are specifically excluded by the very terms of the instrument."). *See also Intel Corp. v. Hartford Accident Indem. Co.,* 952 F.2d 1551, 1559–61 (9th Cir.1991) (under California law, no waiver of policy exclusion absent estoppel or misconduct). Just as the insurer's duty to pay in *Conner* was expressly limited by an exclusion held to be unwaivable, Turner's duty to pay in the present case is limited by the installment payment provision which I would similarly hold unwaivable.

Second, in valid waiver cases, like *Knarston* and its progeny, waiver of the condition makes the waiving party's duty of performance independent of the condition. *See* 1 B.E. Witkin, *Summary of California Law,* Contracts §§ 767–68 (9th ed.1987) (collecting cases). This alteration of the contract lacks consideration and other validating devices. *Restatement* § 84, cmt. d.; 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.5, at 376–77 (2d ed. 1990) ("*Farnsworth*"). However, this absence is tolerated because waiver spares one of the parties (usually the non-waiving party) the loss that would occur if the waiving party's performance were excused by failure of the condition. *See Restatement* § 227, cmt. b. That rationale does not apply to the instant case because the waiving party, Wyler Summit, has already fully performed all of its duties under the contract, so there is no performance to preserve.

In fact, the only effect of waiving the installment payment provision is to add to the performance obligations of Turner, the non-waiving party, by requiring it to pay more, earlier, than was originally required under the contract. Such offensive use of waiver to impose additional duties on other parties is expressly prohibited by our caselaw interpreting California law. *Groves v. Prickett,*

420 F.2d 1119, 1125 (9th Cir.1970); *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 210 (9th Cir.1957) ("[I]t is settled that waiver can be employed only for defensive purposes. It can preclude the assertion of legal rights but it cannot be used to impose legal duties. The shield cannot serve as a sword.").

An even more radical departure is the majority's conclusion that Turner's continued compliance with the provision constitutes a breach of the contract. Tellingly, the majority cites no case (nor has my research uncovered one) where a court has held, as the majority does, that a non-waiving party's continued compliance with the terms of a waived provision provides grounds for breach.[3] What the majority has done is to rewrite the *Ben Hur* contract. Whereas the parties had originally agreed that Turner was *required* to pay no more than $50,000 per year, by virtue of the majority's *ipse dixit*, Turner is now *prohibited* from doing so under the rewritten contract.

The majority's new formula for waiver will no doubt have a corrosive effect on the stability of contractual relations, particularly long-term agreements. Its overly-expansive reading of *Knarston* removes all limits on the kinds of provision that can be waived by parties eager to engage in a line-item redrafting of their agreements.

I would affirm the district court's order that Wyler Summit's complaint fails to state a claim for breach of contract based on a waiver theory.[4] I therefore respectfully dissent.

---

**3.** The majority's approach will lead to some bizarre results when applied to more typical waiver situations. Once an insurance company waived the requirement of notice of a claim, the insured presumably could be held liable for breach of the notice provision, if it gave notice anyway. *Cf. Restatement* § 230 ill. 1 & cmt. b (discussing waiver under identical facts). Similarly, if a seller of goods waived its right to limit the buyer's period for objections to the goods to a five-day period, the buyer could be held in breach if it complied with the five-day limit. *Cf. Fairbanks, Morse & Co. v. Nelson*, 217 F. 218 (9th Cir.1914) (same fact pattern).

**4.** I therefore would not reach the statute of limitations issue and express no opinion on it.